[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 30, 2004
THOMAS  K. KAHN
CLERK

No. 03-14909

D.C. Docket  No.  01-09107-CV-JEM

LORETTA WILSON,

Plaintiff-Appellant,

versus

B/E AEROSPACE, INC.,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Florida

**(June 30, 2004)**

Before ANDERSON, HULL and PRYOR, Circuit Judges.

PRYOR, Circuit Judge:

The key issue in this appeal is whether an admission by the decisionmaker

that a female employee was "the obvious choice" and "most qualified" for a

pending promotion creates a genuine issue of material fact of sex discrimination after the promotion is given to a male employee on the basis that he was allegedly the most qualified. Because this admission could lead a reasonable factfinder to disbelieve the employer's proffered nondiscriminatory reason for not promoting the employee and infer discrimination, we reverse the summary judgment entered against the employee on that claim. We affirm the summary judgment against the employee's claim that her termination, more than a year after the denial of her promotion, was based on sex discrimination, and we remand for further proceedings consistent with this opinion.

## I. BACKGROUND

Loretta Wilson began her employment with B/E Aerospace, Inc. (B/E), a manufacturer of airplane cabin interior products, on April 28, 1997, at its facility in Delray Beach, Florida. The Delray facility was divided into five operating groups. Wilson worked in the Interior Systems Group (ISG) during her tenure at B/E. Wilson was recruited to B/E as an Engineering Business Manager by Michael Stelmat, ISG Vice President. On July 6, 1998, Wilson was promoted to Engineering Manager, and on April 4, 2000, she was promoted to Engineering Director. In all three of these positions, Wilson's supervisor was Stelmat. Wilson received her last promotion immediately before taking maternity leave. When she

returned from leave, Wilson was given the position of Director of Commercial Operations with the same salary and benefits as her previous position.

A Group Vice President and General Manager managed each of the five operating groups and had responsibility for multiple facilities. Below the Group Vice President, the Site Vice President managed a single facility. Subordinate to the Site Vice President, directors and managers supervised the hourly and non-managerial employees.

Roman Ptakowski was the Group Vice President with supervisory responsibility for the Delray facility. It is undisputed that Ptakowski had the ultimate authority to hire, fire, and promote employees at the facility. Ptakowski made the promotion and termination decisions at issue in this appeal.

Although B/E does not have a formal application process for vacancies at the vice presidential level and above, in the fall of 1999, Wilson expressed to Ptakowski an interest in the open Site Vice President position at the Delray facility. Wilson was then the Engineering Manager. Wilson testified that when she inquired about the position, Ptakowski told her that she was "the obvious candidate" for Site Vice President, and "even though women aren't typically in that type of position we'll see what happens when we throw your name out there to corporate." Wilson also testified that Ptakowski told her that she was qualified

for any vice president position. Wilson's supervisor, Stelmat, also testified that Ptakowski admitted that Wilson was an excellent candidate for the position. Philip Pelfrey, Wilson's immediate subordinate and the person who ultimately succeeded her as Engineering Director, testified that Ptakowski told him that Wilson was "the obvious choice" for the Site Vice President position, and that she was the "most qualified based on her accomplishments in the engineering department." Ptakowski denies making any of these statements.

Ptakowski asserts that he went through a series of steps in November 1999 to select the Site Vice President. He first contacted the corporate department of human resources and inquired about possible candidates. He gave human resources the following three minimum requirements for the potential candidates: (1) prior profit and loss responsibility; (2) experience with customers; and (3) knowledge of the aerospace industry. Human resources provided Ptakowski two candidates for the position: Joseph Baker, then Vice President of Marketing and Sales, at the Delray facility, and Norm Jordan, then Vice President or Director of the Seating Products Group, at a Connecticut facility. According to Ptakowski, Wilson was not qualified for the position. Ptakowski interviewed Baker and Jordan for the position and chose Baker as the new Site Vice President at the Delray facility because he met all three requirements. As Site Vice President,

4

Baker was Wilson's supervisor when she became Director of Commercial Operations.

More than a year later, in late January 2001, Baker asked Wilson to move her office closer to the majority of the employees who worked for her in her position as Director of Commercial Operations. When Baker first asked her to move, Wilson protested the move and told Baker that she did not understand this request. Baker replied that "co-locating would help [her] to better manage the department." Wilson told him that she disagreed with his decision, but Wilson agreed to move her office. Although Wilson told Baker that she would move her office, Wilson went to Ptakowski to discuss Baker's decision. Ptakowski told Wilson, however, that he supported Baker's decision to move Wilson's office. Wilson replied that, although she did not like the decision, she would move her office.

On Thursday, January 25, 2001, Wilson packed the contents of her office, locked the door, left the facility, and took some of her belongings home. She asked for copies of her performance appraisals as she left. As she was leaving, Wilson sent an e-mail to Baker stating, "I have an immediate personal issue to address and will be out of the office," but she did not state when she would return.

Ptakowski was out of the office that day and received a phone call from someone at the Delray facility. He was informed that Wilson packed the contents of her office, took her personal belongings, locked the door, and closed the blinds. Ptakowski told human resources to open her office and investigate the circumstances. He also told human resources to contact Wilson and ask her what happened.

On Friday, January 26, 2001, Ptakowski returned to the Delray facility. He visited Wilson's office and found that Wilson had removed almost all of the contents of her office. It appeared to Ptakowski that Wilson had vacated her office. Ptakowski and others inferred from Wilson's conduct that she quit. Two other employees contacted Wilson and told her about Ptakowski's concern over the way she left the facility. Wilson, however, did not make any attempt to contact B/E. She testified that she did not think it was necessary to contact anyone because she informed Baker that she would be out of the office, he had her phone number, and he could have called her if he needed to reach her.

That same day, the Vice President of Human Resources, Barbara Latimer, contacted Wilson and told her not to perform any further work for B/E until she explained her actions. Latimer asked Wilson to come to the facility to meet with her on Monday. During the meeting, Wilson stated that she packed her office in

preparation to move offices. Latimer did not believe Wilson's story, and Ptakowski was not satisfied with Wilson's explanation of her actions. The following Friday, February 2, 2001, after consultation with Baker, Latimer, and other corporate representatives, Ptakowski terminated Wilson for insubordination.

Wilson then filed this employment discrimination action against B/E and alleged sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. sections 2000e et seq., and the Florida Civil Rights Act, Fla. Stat. sections 760.01 et seq. She contends that B/E discriminated against her on the basis of sex by not promoting her to the position of Site Vice President and by terminating her. At the end of discovery, B/E filed a motion for summary judgment. The district court entered summary judgment for B/E on all of Wilson's claims. Wilson now appeals.

## II.  STANDARD OF REVIEW

We review a grant of summary judgment de novo. See Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1357 (11th Cir. 1999). Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). A genuine factual dispute exists "if the jury could return a verdict for the

non-moving party." <u>Damon</u>, 196 F.3d at 1358 (quoting <u>United States v. Four Parcels of Real Property</u>, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc)). In examining the record, we view the evidence in the light most favorable to the non-moving party. <u>See</u> <u>Damon</u>, 196 F.3d at 1358.

## III. DISCUSSION

A plaintiff may establish a claim of illegal disparate treatment through either direct evidence or circumstantial evidence. <u>See</u> <u>Schoenfeld v. Babbitt</u>, 168 F.3d 1257, 1266 (11th Cir. 1999). Wilson alleges that B/E discriminated against her because of her sex when it did not promote her to Site Vice President and when it terminated her. Wilson argues that both direct and circumstantial evidence support her promotion claim. Wilson argues that circumstantial evidence supports her termination claim.

Before we turn to each of her claims, we reject Wilson's contention that "[s]ummary judgment is especially questionable and should seldom be used in employment discrimination cases because they involve examination of motivation and intent." In <u>Chapman v. AI Transport</u>, 229 F.3d 1012, 1026 (11th Cir. 2000) (en banc), we explained "that the summary judgment rule applies in job discrimination cases just as in other cases. No thumb is to be placed on either side of the scale." <u>Id.</u> at 1026. Within that framework, we address Wilson's promotion

and termination claims.

## *A. Promotion Claim*

Wilson alleges that, in November 1999, B/E did not promote her to Site Vice President because of her sex in violation of Title VII. The district court found that Wilson failed to establish a prima facie case of discrimination. In the alternative, the district court found that, even if Wilson established a prima facie case of discrimination, she did not rebut the legitimate, nondiscriminatory reason of B/E for promoting Baker over Wilson to Site Vice President. Although this Court has held that promotions claims like Wilson's are untimely,[1] B/E did not object to the timeliness of this claim, and, therefore, has waived that objection. See Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 102 S. Ct. 1127, 1132 (1982).

### 1. Direct Evidence of Discrimination

This Court defines direct evidence of discrimination as "evidence which reflects 'a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee.'" Damon, 196 F.3d at 1358 (quoting

---

[1] The promotion occurred in November 1999. Wilson did not file with the EEOC a charge of discrimination until April 2001, more than 300 days after the denial of promotion. See EEOC v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1271 (11th Cir. 2002) ("only those claims arising within 300 days prior to the filing of the EEOC's discrimination charge are actionable").

9

Carter v. Three Springs Residential Treatment, 132 F.3d 635, 641 (11th Cir. 1998). Direct evidence is "evidence, that, if believed, proves [the] existence of [a] fact without inference or presumption." Burrell v. Bd. of Trustees of Ga. Military Coll., 125 F.3d 1390, 1393 (11th Cir. 1997). As our precedent illustrates, "only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of" some impermissible factor constitute direct evidence of discrimination. Rojas v. Florida, 285 F.3d 1339, 1342 n.2 (11th Cir. 2001) (quoting Shoenfield, 168 F.3d at 1266) (citations and quotations omitted); see Carter v. City of Miami, 870 F.2d 578, 582 (11th Cir. 1989). If the alleged statement suggests, but does not prove, a discriminatory motive, then it is circumstantial evidence. See Burrell, 125 F.3d at 1393.

Ptakowski's alleged statements are not direct evidence of discrimination. The comment that she was "the obvious choice" does not evidence bias or the intent to discriminate on the basis of sex. It is neutral.

Ptakowski's alleged comment that "even though women aren't typically in that type of position we'll see what happens when we throw your name out there to corporate" does not directly correlate with an intent to discriminate on the basis of sex. See Damon, 196 F.3d at 1358. The statement allows an inference of discrimination, but a factfinder could also infer reasonably that the statement was

10

nothing more than an observation of a fact.  The statement, therefore, does not prove discrimination "without inference or presumption."  Burrell, 125 F.3d at 1393.

In similar instances, this Court has refused to classify such comments as direct evidence of discrimination.  In Damon, an age discrimination case,  the decisionmaker's comment that "the company needed . . . young men . . . to be promoted" did not constitute direct evidence of discrimination.  186 F.3d at 1359.  In Burrell, a sex discrimination case, evidence that the decisionmaker told the plaintiff that "he wanted to hire a man for the position because too many women filled First Federal's officer positions" was not direct evidence that she was terminated because of her sex. 125 F.3d at 1393-34.  In contrast, in Caban-Wheeler v. Elsea, we held that a statement by the decisionmaker that he wanted a black person to have a white employee's job was direct evidence that the white employee was terminated for racially discriminatory reasons.  71 F.3d 837, 842-43 (11th Cir. 1996).  We also found direct evidence of  discrimination in Haynes v. W.C. Caye & Co., Inc., where the decisionmaker stated that women were simply not tough enough to do the job from which the plaintiff had been removed.   52 F.3d 928, 930 (11th Cir.1995).  The district court, therefore, correctly held that Wilson did not present direct evidence of discrimination.

11

### 2. Circumstantial Evidence of Discrimination

In evaluating disparate treatment claims supported by circumstantial evidence, we use the framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089 (1981). Under this framework, the plaintiff first has the burden of establishing a prima facie case of discrimination, which creates a rebuttable presumption that the employer acted illegally. See Combs v. Plantation Patterns, 106 F.3d 1519, 1527-28 (11th Cir. 1997). A plaintiff establishes a prima facie case of disparate treatment by showing that she was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class. See, e.g., McDonnell Douglas, 411 U.S. at 802, 93 S. Ct. at 1824; Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). The methods of presenting a prima facie case are not fixed; they are flexible and depend to a large degree upon the employment situation. See, e.g., Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1185 (11th Cir. 1984).

When the plaintiff establishes a prima facie case, which creates the presumption of discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. See Rojas, 285

12

F.3d at 1342; Combs, 106 F.3d at 1528.  The employer "need not persuade the court that it was actually motivated by the proffered reasons."  Burdine, 450 U.S. at 254-55, 101 S. Ct. at 1094.  If the employer satisfies its burden by articulating one or more reasons, then the presumption of discrimination is rebutted, and the burden of production shifts to the plaintiff to offer evidence that the alleged reason of the employer is a pretext for illegal discrimination.  Id. at 255-26, 101 S. Ct. at 1094-95.

If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it.  See Chapman, 229 F.3d at 1030.  Quarreling with that reason is not sufficient.  See id.  The evidence of pretext may include, however, the same evidence offered initially to establish the prima facie case.  See Combs, 106 F.3d at 1528.

Despite the shifting of the burden of production between the plaintiff and the defendant under the McDonnell Douglas framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  Burdine, 450 U.S. at 253, 256, 101 S. Ct. at 1093, 1095.  A plaintiff may prevail on an employment discrimination claim by either proving that intentional discrimination motivated the employer or producing sufficient evidence to allow a rational trier of fact to

13

disbelieve the legitimate reason proffered by the employer, which permits, but does not compel, the trier of fact to find illegal discrimination. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147-48, 120 S. Ct. 2097, 2108-09 (2000); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 113 S. Ct. 2742 (1993); Abel v. Dubberly, 210 F.3d 1303, 1336 (11th Cir. 2000); Alexander v. Fulton County, 207 F.3d 1303, 1336 (11th Cir. 2000).

### a. Prima Facie Case

Wilson makes three arguments in her attempt to establish a prima facie case of discrimination. Wilson first argues that she has a lighter burden of proof because B/E used subjective criteria in the promotion process. She next contends that the statistical disparity between the percentage of women in high positions and the percentage of qualified women in the work force establishes a prima facie case of disparate treatment. Finally, Wilson contends that she established a prima facie case under the McDonnell Douglas framework because she is a woman, was qualified for the position, expressed interest in the position and was rejected, and a male with lesser qualifications received the position.

Wilson's argument that she has a lighter burden of proof because B/E used subjective criteria in the decisionmaking process is erroneous. This Court has refused to adopt a lower standard when employers use subjective criteria. See

14

Chapman, 229 F.3d at 1033-35 (en banc). Chapman "confirmed beyond doubt the appropriateness of an employer using legitimate, non-discriminatory subjective factors in its decision-making." Denney, 247 F.3d at 1186 n.7. We have explained that "an employer's use of subjective factors in making a hiring or promotion decision does not raise a red flag. Certainly nothing in our precedent established that an employer's reliance upon legitimate, job-related subjective considerations suggests in its own right an intent to facilitate discrimination." Id. at 1186.

Wilson next erroneously cites statistical evidence of an alleged "glass ceiling" as evidence of her prima facie case. She contends that, from May 1999 through July 2002, there were only two female vice presidents, and since 1995, only two females have been chosen for vice president out of 44 open positions. The three cases Wilson wrongly cites in support of her argument, however, are inapposite, although venerable, disparate impact cases, which involved challenges of employment practices and procedures. See Albermarle Paper Co. v. Moody, 422 U.S. 405, 95 S. Ct. 2362 (1975); Rowe v. Gen. Motors, 457 F.2d 348 (5th Cir. 1972); Stewart v. Gen. Motors, 542 F.2d 445 (7th Cir. 1976). Wilson's claim is different from these cases because Wilson asserts an individual claim of disparate treatment regarding the denial of a promotion.

15

The statistical evidence presented by Wilson does not have any probative value in establishing a prima facie case of disparate treatment. This statistical evidence is not even probative of pretext because Wilson has not provided any other relevant information, including the number of women who expressed interest in vice president positions. See, e.g., Howard v. B.P. Oil Co., Inc., 32 F.3d 520, 524 (11th Cir. 1994). "Statistics without any analytical foundation are 'virtually meaningless.'" Evans v. McClain of Ga., Inc., 131 F.3d 957, 963 (11th Cir. 1997) (quoting Brown v. Am. Honda Motor Co., 939 F.2d 346, 352-53 (11th Cir.), cert. denied, 502 U.S. 1058, 112 S. Ct. 935 (1992)).

Wilson's final argument is more promising. Under the McDonnell Douglas framework, to prevail on a claim of failure to promote, a plaintiff may establish a prima facie case of sex discrimination by showing that: (1) she is a member of a protected class; (2) she was qualified and applied for the promotion; (3) she was rejected despite her qualifications; and (4) other equally or less qualified employees who were not members of the protected class were promoted. See Lee v. GTE Florida, Inc., 226 F.3d 1249, 1253 (11th Cir. 2000). The parties do not dispute that Wilson is a member of a protected class, she applied for the promotion to Site Vice President, and the position was given to a male.

The only remaining issues involve Wilson's qualifications and those of

16

Baker. B/E presented substantial evidence that Wilson was not qualified for the promotion and that Baker had superior qualifications. The district court agreed and found that Wilson was not qualified for the position and that she was not equally or more qualified than Baker. The problem for B/E is that this evidence is disputed by Wilson with other evidence.

Wilson presented substantial evidence that she was qualified for the promotion. Wilson testified that Ptakowski, the decisionmaker, told Wilson that she "was the obvious candidate for the Vice President position and even though women aren't typically in that type of position we'll see what happen when we throw your name out there to corporate." Pelfrey, a co-employee, testified that Ptakowski told him that Wilson was "the obvious choice" for Site Vice President and the "most qualified" for the promotion "based on her accomplishments in the engineering department." Stelmat also testified that Ptakowski admitted that Wilson was an excellent candidate for the promotion.

The two alleged statements by Ptakowski to Pelfrey also created an issue of fact whether Baker was equally or more qualified for the position than Wilson. Ptakowski's alleged statements to Pelfrey that she was "the obvious choice" and the "most qualified" allow an inference that Ptakowski thought that Baker was less qualified than Wilson. B/E lists objective factors in Baker's background to prove

17

that he was more qualified, but that evidence creates a genuine issue of material fact for the jury to decide. Because a reasonable factfinder could believe Ptakowski's admissions that Wilson was qualified for Site Vice President and that Baker was less qualified than Wilson, the district court erred in holding that Wilson did not present a prima facie case of discrimination.

### b. Legitimate Nondiscriminatory Reason and Pretext

When the plaintiff establishes a prima facie case of discrimination, the employer must articulate some legitimate, nondiscriminatory reason for the employee's rejection. See Lee, 226 F.3d at 1253. If the employer meets this burden of production, the plaintiff must then establish that the proffered reasons for promoting another instead of the plaintiff were pretextual. Id. Accordingly, we must decide whether Wilson created a genuine issue of material fact regarding whether Ptakowski selected Baker based on an unlawful motive.

B/E articulated a legitimate, nondiscriminatory reason for not choosing Wilson for the position: Baker was more qualified. At the time of the promotion, Baker was serving as Vice President of Sales and Marketing. According to B/E, he had significant profit and loss responsibility for many areas of business, including engineering, marketing, purchasing, and support functions. He also had management responsibility for two locations with over 70 employees. As Vice

18

President of Sales and Marketing, Baker had extensive contact with customers of B/E.

Because B/E offered a legitimate, nondiscriminatory reason for not promoting Wilson, the burden of production shifts to Wilson, who must prove that the articulated reason is a pretext for sex discrimination. See Holifield, 115 F.3d at 1565. Wilson relies on two forms of evidence to satisfy her burden. First, she contends that she was objectively more qualified than Baker. Second, she relies on Ptakowski's alleged statements as evidence of pretext.

Wilson's first argument fails. Wilson cannot prove pretext by asserting baldly that she was better qualified than the person who received the position at issue. See Alexander v. Fulton County, 207 F.3d 1303, 1339 (11th Cir. 2000). Wilson must instead adduce evidence that the disparity in qualifications was "so apparent as virtually to jump off the page and slap you in the face." Cofield v. Goldkist, Inc., 267 F.3d 1264, 1268 (11th Cir. 2001) (citing Denney, 247 F.3d at 1187 (11th Cir. 2001) (quoting Lee, 226 F.3d at 1253-54); accord Alexander, 207 F.3d at 1339-40 (all quoting Denies v. Texas Dept. of Protective & Reg. Servs., 164 F.3d 277, 280 (5th Cir. 1999)). For the discrepancies to "jump off the page and slap you in the face," they must be of such weight and significance that no reasonable person could have chosen Baker over Wilson. Lee, 226 F.3d at 1254.

This Court must not "judge which employee was more qualified, but . . . determine whether any disparity . . . is so great that a reasonable fact-finder could infer that [B/E] did not believe" that Baker was better qualified. Cofield, 267 F.3d at 1268.

The district court correctly determined that Wilson failed to produce sufficient evidence that the disparities between her qualifications and Bakers were so great that they "jump off the page and slap you in the face." Id. A review of their objective qualifications actually suggests that Baker was more qualified than Wilson. Before the promotion, Baker was Vice President of Marketing and Sales. Wilson was the Engineering Manager and had not yet served at the director level. Wilson did not have as much managerial experience as Baker, nor did she have as much experience with customers of B/E. Wilson's background was primarily in a single division, engineering, and Baker had experience in multiple divisions. Wilson's self-serving assertions about her own qualifications and leadership abilities would not allow "a reasonable fact-finder [to] infer that [B/E] did not believe" that Baker was better qualified under the stringent standard of this Court. Id.

Wilson's second argument has merit. Wilson presented admissions of Ptakowski, the decisionmaker, that he believed that Wilson was more qualified than Baker. When Wilson expressed her interest in the position, Ptakowski

allegedly told her that she was "the obvious candidate" for the position of Site Vice President. Pelfrey testified that Ptakowski told him that Wilson was the "most qualified" and "the obvious choice" for the position. Stelmat testified that Ptakowski admitted Wilson was an excellent candidate for the position.

These alleged admissions of Ptakowski are accompanied by some evidence of discriminatory animus. "Language not amounting to direct evidence, but showing some [discriminatory] animus, may be significant evidence of pretext once a plaintiff has set out the prima facie case." Jones v. Bessemer Carraway Med. Ctr., 151 F.3d 1321, 1323 n.4 (11th Cir. 1998). Ptakowski's alleged statement that "women aren't typically in that type of position" could allow a reasonable factfinder to infer discriminatory animus.

These admissions of Wilson's qualifications and Ptakowski's discriminatory animus together could lead a reasonable factfinder to conclude that Ptakowski did not believe that Baker was more qualified than Wilson and discriminated against Wilson on the basis of sex. In Reeves, the Supreme Court explained that "it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." 530 U.S. at 147, 120 S. Ct. at 2108. A plaintiff may be able to establish that the employer's asserted justification is false and a pretext for discrimination based on some of the same evidence that

21

established a prima facie case of discrimination.  Id.  A plaintiff need not "always introduce additional, independent evidence of discrimination."  Id. at 148, 120 S. Ct. 2109.

After carefully examining the record, we conclude that Wilson's "prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."  Id.  A genuine issue of material fact exists regarding whether the failure to promote Wilson was based on her sex.  The district court, therefore, erred in granting summary judgment for B/E on Wilson's promotion claim.

*B.  Termination Claim*

Wilson also alleges that B/E terminated her because of her sex in violation of Title VII.  A plaintiff may establish a prima facie case of discrimination through circumstantial evidence by proving that (1) she belongs to a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated employees outside her classification more favorably; and (4) she was qualified to do the job.  See Holifield, 115 F.3d at 1562 (citing McDonnell Douglas, 411 U.S. at 802, 93 S. Ct. at 1824; Coutu v. Martin County Bd. of County Commissioners, 47 F.3d 1068, 1073 (11th Cir.1995); Turnes v. AmSouth

Bank, N.A., 36 F.3d 1057, 1060 (11th Cir.1994)). The plaintiff and the employee she identifies as a comparator must be similarly situated "in all relevant respects." Id. The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer. See Silvera v. Orange County Sch. Bd., 244 F.3d 1253, 1259 (11th Cir. 2001).

The district court found that Wilson failed to establish a prima facie case of discrimination in the termination of her employment. Although Wilson is a member of a protected class, was subjected to an adverse employment action when B/E terminated her, and was qualified for her job, Wilson failed to identify any male employee who was similarly situated and treated more favorably than she was treated. Wilson's failure to identify a comparator does not end the analysis of her termination claim, however.

"If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." Holifield, 115 F.3d at 1562 (citing Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 182 (1st Cir.1989) (emphasis added)). Wilson attempts to prove that she was terminated because of her sex in two ways. She first asserts that she was not guilty of insubordination. She next speculates that B/E terminated her because "she was discriminatorily passed over for promotion, knew it, and

23

discomfited her superiors by complaining of it[.]"

Wilson's self-serving assertion that she was not insubordinate does not alone establish that she was terminated because of her sex. "A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by sex." Lee, 226 F.3d at 1253. The role of this Court "is to prevent unlawful hiring practices, not to act as a super personnel department that second-guesses employers' business judgments." Id. at 1254. "Our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." Damon, 196 F.3d at 1361. Whether Wilson's conduct was insubordinate is not an issue for this Court to referee.

Wilson also attempts to link her termination with her denial of the promotion to Site Vice President. These events, however, are too remote to allow a reasonable inference of sex discrimination. The denial of the promotion occurred in November 1999, and B/E terminated Wilson in February 2001, more than one year later. Although Wilson presented evidence of a contentious relationship with Baker, she provided no evidence of a connection between the denial of the promotion and her termination. Wilson also offered no evidence that her termination was based on her sex. The district court, therefore, properly entered summary judgment for B/E on Wilson's termination claim.

24

## IV. CONCLUSION

We reverse the summary judgment against Wilson on her promotion claim. Ptakowski's admissions that Wilson was the most qualified for the promotion, combined with an admission of discriminatory animus, if believed, are sufficient evidence to allow a trier of fact to conclude that Wilson was not promoted because of her sex. We affirm the summary judgment for B/E on Wilson's termination claim. Wilson failed to present evidence that her termination was disparate treatment in contrast with a similarly situated male employee, and she failed to present any other evidence of discrimination.

The judgment of the district court is AFFIRMED IN PART, REVERSED IN PART, and REMANDED.