[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 20, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-12999
Non-Argument Calendar

_____

D. C. Docket No. 04-02588-CV-T-30TGW

RONALD MCCALISTER,

Plaintiff-Appellant,

versus

HILLSBOROUGH COUNTY SHERIFF,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(December 20, 2006)**

Before TJOFLAT, CARNES and HULL, Circuit Judges.

PER CURIAM:

Ronald McCalister appeals from the district court's grant of summary

judgment in favor of the Hillsborough County Sheriff in his employment discrimination lawsuit filed pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a). McCalister raises two issues on appeal: (1) whether the district court erred in finding that he failed to present any evidence of similarly situated employees who received less severe discipline in support of his Title VII race discrimination claim; and 2) whether the district court erred in granting summary judgment based on its finding that he failed to establish that the legitimate, non-discriminatory reasons offered to support his termination were pretextual. Because we agree with the district court that McCalister failed to present any evidence of similarly situated employees who received less severe discipline, we need only reach the first issue.

I.

McCalister, who is black, worked for the Hillsborough County Sheriff from June 1994 until March 2003. He occasionally worked off-duty law enforcement assignments pursuant to a contract between the Sheriff and the United States Central Command. Central Command hired the Sheriff to provide continuous security coverage for military personnel living at the SOHO apartments in Hyde Park.

On December 16, 2002, McCalister was assigned to work an eight hour off-

duty shift beginning at 11:00 p.m. and ending at 7:00 a.m. the following day.

Shortly after 4:00 a.m., McCalister left his assignment without permission to

socialize with a female acquaintance twelve miles away. McCalister drove his

patrol car to his home, fifteen minutes away, where he put on a black sweatshirt

over his patrol uniform and got into his personal vehicle. He then drove to meet

his acquaintance.

Before McCalister met up with the woman, he was pulled over by Deputy

Timothy Locke. The two men disagree on the details of that stop, but Deputy

Locke contends that he had reasonable suspicion to stop McCalister, and

McCalister contends that he was stopped for "driving while black." Locke did not

issue a traffic citation or warning. McCalister left the scene of the stop, returned

home, removed his sweatshirt, got in his patrol car, and returned to the SOHO

apartments between 5:00 and 5:15 a.m. In the meantime, Locke spoke with his

immediate supervisor, Corporal Collado, informing him that he had stopped

someone who claimed to be a Sheriff's Deputy and drove a car registered to

"Ronald McCalister."

Corporal Collado, who used to work with McCalister, recognized the name

and determined that McCalister was supposed to be at the SOHO apartments.

When Collado arrived at the apartment complex, he found McCalister talking on

the phone and observed that McCalister had switched off his patrol car radio. McCalister admitted to leaving his post, explaining that he had left the job to deliver a personal vehicle to a friend. On December 17, McCalister submitted a signed pay form indicating that he had completed a full eight-hour shift on the previous night.

Corporal Collado, meanwhile, called the off-duty coordinator to inform him of the incident. Collado also filled out a report which he gave to the District Commander. The District Commander referred the incident to Internal Affairs.

On January 2003, Internal Affairs concluded that McCalister had violated six Sheriff's Office rules: (1) leaving an assigned work area, (2) negligence associated with safety of persons or property, (3) failure to follow standard operating procedure, (4) falsification of official documents, (5) failure to respond to radio calls, and (6) conduct unbecoming a member of the Sheriff's office. In a deposition, McCalister admitted that he knew he should not have left his assignment without permission, admitted that he lied to Collado regarding his reasons for leaving, and admitted that he knew that the purpose of his assignment was to protect military personnel living at the apartments.

The following month, Major Bill Davis conducted a disciplinary hearing in which he concurred with Internal Affairs as to all charges, and agreed that

McCalister should be dismissed from the Sheriff's office. McCalister appealed the disciplinary recommendation to the Disciplinary Review Board, which affirmed the sanction. The Sheriff later offered McCalister the option of retiring so that he could seek employment with another agency, and McCalister accepted that offer.

II.

We review de novo a district court's grant of summary judgment, viewing all evidence in the light most favorable to the non-moving party. See Drago v. Jenne, 453 F.3d 1301, 1305 (11th Cir. 2006). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Madray v. Publix Supermarkets, Inc., 208 F.3d 1290, 1296 (11th Cir. 2000) (quoting Fed. R. Civ. Pro. 56(c)).

Under Title VII, it is unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). In evaluating a Title VII disparate treatment claim supported by circumstantial evidence, we use the framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.

Ct. 1817 (1973). Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004). "Under this framework, the plaintiff first has the burden of establishing a prima facie case of discrimination, which creates a rebuttable presumption that the employer acted illegally." Id. at 1087.

A prima facie case of disparate treatment is established when the plaintiff demonstrates that he was "a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class." Id. "The methods of presenting a prima facie case are not fixed; they are flexible and depend to a large degree upon the employment situation." Wilson, 376 F.3d at 1087. "In cases involving alleged racial bias in the application of discipline for violation of work rules, the plaintiff," who must be a member of a protected class, must demonstrate "(a) that he did not violate the work rule, or (b) that he engaged in misconduct similar to that of a person outside the protected class, and that the disciplinary measures enforced against him were more severe than those enforced against the other persons who engaged in similar misconduct." Jones v. Gerwens, 874 F.2d 1534, 1540 (11th Cir. 1989). A plaintiff is similarly situated to another employee only if "the quantity and quality of the comparator's misconduct [are] nearly identical." Burke-Fowler v. Orange County, Fla., 447 F.3d 1319, 1323 (11th Cir. 2006) (citing Maniccia v.

6

Brown, 171 F.3d 1364, 1368 (11th Cir. 1999)) (internal quotations omitted). This standard prevents "courts from second-guessing employers' reasonable decisions and confusing apples with oranges." Id. at 1323 (citing Maniccia, 171 F.3d at 1368)) (quotation marks omitted).

III.

The Sheriff's Office found that McCalister had committed several serious offenses. He abandoned his post without notifying anyone, left military personnel and their property unsecured, lied to a supervising officer, and submitted a false document. He has not identified a comparator who engaged in a quantity and quality of misconduct similar to his own without being dismissed from the force.

McCalister identified the following employees as potential comparators: Carmine Pisano, Michael Locke, Thomas Kelly, Thomas Hill, Al Luis, Hugh Crawford, Richard Dibitonto, Sharon Stepnowski, Emanuel Feller, Paul Davis, Ed Rochelle, and Douglas Richards. Of these individuals, all broke one, two, or three of the same rules as McCalister. None broke all six.

McCalister points to five employees who allegedly committed McCalister's most serious violation—leaving an off-duty assignment mid-shift—but offers documentation and specific information about only one, Michael Locke. In 1997, Locke was suspended for 15 days for "Off-Duty Work," "Carelessness without

Loss," and "Not Following SOP," but McCalister presented no further details about Locke's misconduct. In 2002, Locke received a written reprimand for "Failure to Report for Duty Due to Improper Conduct." A handwritten notation next to the allegation reads "motorcycle crash." Even overlooking the possibility that Locke missed work because he was in a motor vehicle accident which was his fault, a failure to report for duty is not materially identical to departing one's post mid-shift for a tryst, leaving military personnel and property unguarded, lying to another officer about it, and then submitting a false document requesting payment for the trouble. McCalister's transgressions, unlike Locke's tardiness, were multiple, included an element of deception, and endangered military personnel.

McCalister identifies only one employee charged with as many as three of the same six offenses he committed. In 2004, the Sheriff's Office brought charges against Carmine Pisano for falsifying 129 documents, failure to follow standard operating procedure, and conduct unbecoming a member of the Sheriff's office. The Sheriff suspended Pisano for 168 days. While falsification of documents is a serious offense, Pisano received nearly five months of suspension, and there is no indication that Pisano went on a frolic mid-shift or left military personnel and property unguarded, thereby endangering them. Furthermore, Pisano committed three offenses, not six. Pisano's misconduct is thus not "nearly identical" to

McCalister's.

Viewing the evidence in the light most favorable to McCalister, he has failed to present any evidence of similarly situated employees who were not members of a protected class, but who received less severe disciplinary sanctions.  Therefore, he has failed to establish a <u>prima facie</u> case of Title VII discrimination.  <u>See</u> <u>Drago</u>, 453 F.3d 1305; <u>see</u> <u>Jones</u>, 874 F.2d at 1540.  The district court's decision to grant Sheriff's motion for summary judgment was appropriate.  <u>See</u> <u>Madray</u>, 208 F.3d at 1296; <u>see</u> <u>Wilson</u>, 376 F.3d at 1092.

**AFFIRMED.**