[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 2, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-15916
Non-Argument Calendar

_____

D. C. Docket No. 05-01067-CV-B-S

MIRANDA SUMERLIN,

Plaintiff-Appellant,

versus

AMSOUTH BANK,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(August 2, 2007)**

Before ANDERSON, BIRCH and PRYOR, Circuit Judges.

PER CURIAM:

Miranda Sumerlin, an African-American female, appeals the summary

judgment entered in favor of her former employer, AmSouth Bank, and against

Sumerlin's complaint of illegal termination and disparate pay based on racial

discrimination.  See 42 U.S.C. §§ 1981, 2000e-2(a).  The district court granted

summary judgment in favor of AmSouth on the ground that Sumerlin failed to

establish a prima facie case of racial discrimination regarding either her

termination or pay.  We affirm.

## I.  BACKGROUND

On July 2, 2001, Sumerlin was hired as a full-time file clerk by AmSouth.

In October 2001, Sumerlin was promoted to the position of payroll representative.

During Sumerlin's tenure, seven other payroll representatives worked in the human

resources department.

With the exception of Emily Hilton, a white female, all of the payroll

representatives had more seniority than Sumerlin.  Sumerlin's job duties included

filing and data entry, such as overtime, name, and address changes.  Hilton's job

duties included balancing payroll accounting and verifying employment.  AmSouth

paid Hilton more than it paid Sumerlin.

As a part of its routine monitoring for illegal activity, AmSouth ran a

monthly report that listed the accounts of employees that, in the previous month,

had made ten or more deposits, excluding payroll and automated deposits, totaling

greater than $3,000. In December 2004, Sumerlin's personal account appeared on the report. AmSouth assigned regional security manager Sherry Hilyer, a white female, to investigate. Upon further review of Sumerlin's accounts, AmSouth determined that Sumerlin had deposited more than $10,000 in cash into her accounts between November 1, 2004, and December 6, 2004. From April 1, 2004, to December 6, 2004, Sumerlin deposited more than $32,000 in cash into her accounts.

On January 3, 2005, AmSouth informed Sumerlin that she was being investigated because of suspicious activity involving one or more of her AmSouth bank accounts. Hilyer asked Sumerlin to identify the source of the cash deposits. Sumerlin told Hilyer that she and her husband owned two businesses, a barber shop, and a detail shop.

Hilyer asked Sumerlin to provide her with records of the sources of the cash deposits and tax records for the last two to three years. A week later, Sumerlin had not produced any business records. Andrea McCaskey, an African-American female and Vice President of Employee Relations, contacted Sumerlin and asked her "to please find something that she could show them," and told Sumerlin to cooperate with the investigators.

On January 19, 2005, Sumerlin again met with Hilyer. Sumerlin refused to

3

give Hilyer the records that were requested. According to Sumerlin, when asked the reason for the investigation, Hilyer responded that Sumerlin was being questioned because she was black, worked in payroll, and should not have been able to put that amount of money into her account.

Hilyer reported to Bill Burch, head of corporate security, and Burch and Hilyer discussed the results of the investigation with McCaskey. Based on this information, McCaskey and her supervisor, Lisa Mead, decided to terminate Sumerlin.

Sumerlin brought this action and alleged race discrimination with regard to her termination and pay. AmSouth moved for summary judgment, which the district court granted. Sumerlin appealed.

## II. STANDARD OF REVIEW

We review a grant of summary judgment <u>de novo</u>. <u>Wilson v. B/E Aerospace, Inc.</u>, 376 F.3d 1079, 1085 (11th Cir. 2004). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When reviewing the record, "we view the evidence in the light most favorable to the non-moving party."

4

Wilson, 376 F.3d at 1085.

### III. DISCUSSION

A complaint of racial discrimination in employment can be proved with either direct or circumstantial evidence. See id. at 1085-91. Sumerlin does not argue that her complaint is supported by direct evidence of discrimination. We address in two parts whether Sumerlin presented circumstantial evidence to support her complaints of discrimination regarding her termination and pay.

### A. Termination

Sumerlin failed to present circumstantial evidence that her termination was based on her race. To establish a prima facie case of discrimination regarding a termination, an employee may prove that "she was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class." See id. at 1087. "If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).

Sumerlin concedes that she cannot identify a similarly situated non-African American employee who was treated more favorably, but argues that she presented other circumstantial evidence that her termination was racially motivated.

5

Sumerlin's argument fails. Sumerlin contends that her testimony that Hilyer told her she was being investigated because she was black coupled with the fact that the decision-makers based their decision to terminate Sumerlin on information provided by the investigator creates an inference of race discrimination. These facts do not give rise to an inference of discrimination.

Even if Hilyer made a comment about Sumerlin's race, the comment was not made in reference to Sumerlin's termination and Hilyer did not make the decision to terminate Sumerlin. The decision-maker was independently aware that Sumerlin had refused to provide documentation from her businesses to support her cash deposits. The race-related comment by the investigator, even if true, is insufficient to support an inference of discriminatory termination.

### B. Disparate Pay

Sumerlin also failed to present circumstantial evidence that her pay was racially discriminatory. To establish a prima facie case of discrimination regarding pay, a plaintiff may prove that "(1) she belongs to a racial minority; (2) she received low wages; (3) similarly situated comparators outside the protected class received higher compensation; and (4) she was qualified to receive the higher wage." Cooper v. Southern Co., 390 F.3d 695, 734–35 (11th Cir. 2004). Sumerlin cannot identify a similarly situated employee who received higher wages than her.

6

On appeal, the only employee that Sumerlin contends is similarly situated is Hilton, a white female. Like Sumerlin, Hilton was employed as a payroll representative. Hilton was paid more than Sumerlin, and Sumerlin argues that Hilton was similarly situated.

We disagree with Sumerlin. An employee is similarly situated if she performs "the same type of tasks" as the plaintiff. See id. at 735. The plaintiff must establish that the employee is "similarly situated in all relevant respects." Wilson, 376 F.3d at 1091 (internal quotation marks omitted). The comparator employee "must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." Id.

Hilton was not similarly situated to Sumerlin, because Hilton performed different tasks than Sumerlin. Sumerlin handled overtime and advance pay and entered data, such as name and address changes, but Hilton balanced payroll accounts and verified employment. Sumerlin even admitted that all of the payroll representatives "had different duties." Because the two were not similarly situated, Sumerlin's lower wage was not circumstantial evidence of discrimination.

## IV. CONCLUSION

The summary judgment in favor of AmSouth is

**AFFIRMED.**