[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-14108
Non-Argument Calendar

_____

D.C. Docket No. 1:12-cv-00046-CG-M


ERIC ARCHIE,

Plaintiff-Appellant,

versus

FRANK COCKRELL BODY SHOP, INC.,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(September 16, 2014)

Before WILLIAM PRYOR, MARTIN, and FAY, Circuit Judges.

PER CURIAM:

Eric Archie appeals the district judge's order granting summary judgment to his former employer, Frank Cockrell Body Shop, Inc. ("Cockrell"), in an action alleging race discrimination. We affirm.

## I. BACKGROUND

Archie, an African-American male, was employed by Cockrell. In July 2011, Archie was involved in an altercation at work with Nick Edwards, another Cockrell employee. Following this altercation, Archie left work and did not return. According to Archie, Paige Howell, Cockrell's human resources manager, fired Archie later that day for placing his hands on another employee. Thereafter, Archie sued Cockrell under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a)(1), and 42 U.S.C. § 1981. He asserted Cockrell had discriminated against him based on his race. Archie contended two white Cockrell employees, Wesley Clements and Frank Cooley, were involved in a similar altercation in February 2011, but neither had been fired.

In his deposition, Archie described the incident that led to his termination. Following a disagreement in the Cockrell paint booth on the day of the incident, Nick Edwards ran toward Archie. As Edwards approached him, Archie extended his hands to defend himself, pushed Edwards back onto the hood of a car, and held his hands around Edwards's neck for a few seconds. After Archie released Edwards, Edwards left the paint booth, and Archie became concerned that his life

2

might be in danger. Consequently, Archie clocked out, called Paige Howell from his truck in the Cockrell parking lot, and told her "what was going on." ROA at 197-98, 201. Howell told Archie to leave and said she would call him back. During a phone call later that day, Howell told Archie he had been fired for placing his hands on another employee. When Howell asked during that call why Archie had acted as he did, he responded that he had acted to defend himself. Edwards, who is also African American, was not fired as a result of the altercation.

Archie further testified that, while at work in February 2011, Frank Cooley hit Wesley Clements. Although Clements reported the incident to Howell, Cooley had not been fired. Archie also testified he had no complaints about how he had been treated at Cockrell before the altercation with Edwards. He recently had received a raise, and was in a supervisory role at the time of the incident.

Howell testified in her deposition that, following the Archie-Edwards incident, Cockrell employee Ronald Crawford told Howell that Archie and Crawford had gone into the paint booth to smoke marijuana. After they closed the door, Archie and Edwards exchanged words, Archie choked Edwards, and Crawford pulled Archie off of Edwards. Howell testified she did not speak with Archie by phone on the day of the incident. She had tried calling Archie that day, but he had not answered. She first spoke with him the next morning. Howell

3

testified she did not fire Archie; rather, she assumed he quit because he clocked out and left.

Howell further testified that, after the February 2011 Clements-Cooley incident, she spoke with both men, following which she sent them home. Howell did not recall Clements saying that Cooley had placed his hands on Clements. Another employee told Howell that Clements and Cooley had argued, Cooley began to walk away, Clements said something and "got in Cooley's face," and "Cooley shoved [Clements] out of his face." ROA at 176. Howell had suspended both men for one week, because she believed both had been responsible for the altercation. Howell explained her decision was based in part on the fact that reports of the incident included "hearsay" and "gossip." ROA at 182.

Howell testified she subsequently offered Clements a job at another location, because she did not want Clements and Cooley to continue working together. Clements declined the offer because of the commute. Frank Cooley testified in his deposition that he pushed Clements, but did not hit him.

Nick Edwards testified in his deposition that, on the day of the incident with Archie, Archie and Ronald Crawford told him they needed to close the paint booth doors to smoke marijuana. After Archie closed the doors, Edwards began to re-open the doors, and Archie grabbed Edwards by the throat and threw him onto the

4

hood of a car.  Archie released Edwards when Crawford protested.  Edwards reported the incident to Cockrell personnel.

In a declaration Archie submitted with his opposition to Cockrell's summary judgment motion, Wesley Clements attested that, during his altercation with Cooley, Cooley hit him in the face.  Clements relayed the incident to Cockrell management, and Howell told Clements to leave for the rest of the day.  Archie also submitted a state unemployment agency notice showing he had been denied unemployment benefits in 2011, because he had been discharged from Cockrell for "fighting on the job."  ROA at 278.

In granting Cockrell's summary judgment motion, the district judge first concluded Archie had met his prima facie burden of showing Cockrell had treated similarly situated employees outside of his class more favorably.  Second, the judge found Cockrell had proffered a legitimate, nondiscriminatory reason for the adverse employment action, Archie's termination, because he was involved in a fight at work and tried to choke another employee.  Third, the judge determined Archie had not shown Cockrell's proffered legitimate reason for his termination was pretextual.

The district judge noted there were more culpable circumstances surrounding Archie's confrontation with Edwards compared to the Clements-Cooley incident.  In particular, it had been reported to Howell that Archie had

5

entered the paint room to smoke marijuana, argued with Edwards, and choked him. It also had been reported to Howell that another employee had to pull Archie off of Edwards, after which Archie left the facility. Conversely, multiple witnesses to the Clements-Cooley incident reported it involved merely a push or shove.

The judge explained that, although Archie claimed he told Howell he had acted in self-defense, he had not done so until Howell called to tell him he had been fired. The judge found it would have been reasonable for Howell not to have changed her decision merely because Archie claimed self-defense without specifically denying the alleged conduct. The judge further noted no action had been taken against Edwards, who is African American, and Archie had been treated well over the course of his employment. The judge determined these factors further supported a finding that Archie was terminated because of the belief he had been the aggressor in the confrontation, and not because of racial bias.

Instead of showing a nondiscriminatory reason for the adverse employment action taken against him, Archie argues on appeal that Cockrell maintained it did not fire him. He contends the district judge improperly found Cockrell had given a nondiscriminatory reason for firing him: his placing his hands on another employee. Archie contended a factual dispute remained regarding the reason Cockrell no longer employed Archie. Archie further asserts Cockrell's changing

6

explanations for why he was no longer employed also showed the purported

nondiscriminatory reason for his termination was pretextual.

## II. DISCUSSION

We review a district judge's order granting summary judgment de novo.

*Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1161-62 (11th

Cir. 2006). Summary judgment is appropriate when there is no genuine dispute as

to any material fact and the moving party is entitled to judgment as a matter of law,

viewing all of the facts in the record in the light most favorable to the non-moving

party. *Id.*; *see* Fed. R. Civ. P. 56(a). A genuine factual dispute exists if a jury

could return a verdict for the non-moving party. *Wilson v. B/E Aerospace, Inc.*,

376 F.3d 1079, 1085 (11th Cir. 2004).

The party moving for summary judgment bears the initial responsibility of

informing the district judge of the basis for its motion and identifying those

portions of the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, which it believes demonstrate the

absence of a genuine dispute of material fact. *Jones v. UPS Ground Freight*, 683

F.3d 1283, 1292 (11th Cir. 2012); *see* Fed. R. Civ. P. 56. The burden then shifts to

the non-moving party to rebut that showing by producing affidavits or other

relevant and admissible evidence beyond the pleadings. *Jones*, 683 F.3d at 1292.

7

The non-moving party does not satisfy his burden, if the rebuttal evidence is merely colorable, or not significantly probative of a disputed fact. *Id.*

Under Title VII, it is unlawful for an employer to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of his race. 42 U.S.C. § 2000e-2(a)(1). The elements of a § 1981 race-discrimination claim are the same as a Title VII disparate-treatment claim and need not be analyzed separately. *See Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 843 n.11 (11th Cir. 2000). A plaintiff establishes a prima facie case of discrimination by showing (1) he belongs to a protected class; (2) he was subjected to an adverse employment action; (3) his employer treated similarly situated employees outside of his class more favorably; and (4) he was qualified to do the job. *McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008).

In a case alleging discriminatory discipline, establishing the third element requires showing a similarly situated employee, who was engaged in the same or similar misconduct but did not receive similar discipline. *See Lathem v. Dep't of Children & Youth Servs.*, 172 F.3d 786, 792 (11th Cir. 1999). We require the quantity and quality of the comparator's misconduct to be "nearly identical" to prevent judges from second-guessing employers' reasonable decisions. *Burke-*

8

*Fowler v. Orange Cnty.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (per curiam) (citing

*Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)).[1]

Establishing a prima facie case creates a rebuttable presumption of unlawful

discrimination. *Rioux v. City of Atlanta*, 520 F.3d 1269, 1275 (11th Cir. 2008).

The burden then shifts to the employer to provide a legitimate, nondiscriminatory

reason for disciplining the employees differently. *See Lathem*, 172 F.3d at 793. If

the employer meets this burden, the presumption of discrimination is rebutted, and

the burden shifts back to the plaintiff to produce sufficient evidence to permit a

reasonable factfinder to find the proffered reason is a pretext for unlawful

discrimination. *See Rioux*, 520 F.3d at 1275.

To establish pretext, a plaintiff must show both that the employer's reason

was false, and that discrimination was the real reason. *Brooks*, 446 F.3d at 1163.

A "new level of specificity" applies to the inquiry at this step, in which the plaintiff

must demonstrate "such weaknesses, implausibilities, inconsistencies,

incoherencies, or contradictions in the employer's proffered legitimate reasons for

its action that a reasonable factfinder could find them unworthy of credence."

*Rioux*, 520 F.3d at 1275 (citation and internal quotation marks omitted). If the

---

[1] Although the "nearly identical" misconduct requirement was called into question by *Alexander v. Fulton County*, 207 F.3d 1303, 1333-34 (11th Cir. 2000), *overruled in part on other grounds by Manders v. Lee*, 338 F.3d 1304, 1328 n.52 (11th Cir. 2003) (en banc), we are "bound to follow *Maniccia*'s 'nearly identical' standard rather than the standard articulated in *Alexander* because when a later panel decision contradicts an earlier one, the earlier panel decision controls." *Burke-Fowler*, 447 F.3d at 1323 n.2; *see also McCann*, 526 F.3d at 1374 n.4.

proffered reason might motivate a reasonable employer, a plaintiff cannot merely recast the reason, but must "meet the reason head on and rebut it." *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc) (addressing Age Discrimination in Employment Act ("ADEA") claims). Showing the employer was mistaken in its beliefs is insufficient, and a plaintiff must show the employer's belief was not credible. *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470-71 (11th Cir. 1991) (addressing pretext in an ADEA case); *see also E.E.O.C. v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1176 (11th Cir. 2000) (explaining, when an employer's investigation into misconduct produces contradictory accounts of events in a Title VII retaliation case, the employer lawfully may choose between the conflicting versions, as long as the choice is honest).

If the employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of the reasons to survive a summary judgment motion. *Chapman*, 229 F.3d at 1037; *see also Lathem*, 172 F.3d at 793 (explaining a plaintiff is entitled to survive summary judgment if there is sufficient evidence to create a genuine issue of fact, concerning the truth of each of the employer's proffered reasons for its challenged actions); *cf.* Fed. R. Civ. P. 8(d)(2)-(3) (permitting the pleading of both alternative and inconsistent claims). Evidence that disciplinary measures enforced against the plaintiff were more severe than those enforced against a person outside the protected class, who engaged in similar

10

misconduct may be used to show pretext. *See Rioux*, 520 F.3d at 1276-77; *see also Wilson*, 376 F.3d at 1091 (explaining a plaintiff may rely on evidence used to establish a prima facie case in showing pretext ).

Although a factual dispute exists concerning whether Archie quit or was fired for fighting or for abandoning his job, viewed in the light most favorable to Archie, there is evidence in the record from which a reasonable factfinder could find he was fired for fighting.[2] *See Brooks*, 446 F.3d at 1161-62; *Wilson*, 376 F.3d at 1085. Assuming Archie established a prima facie discriminatory-discipline case, he has not met his burden of showing pretext regarding Cockrell's claim that it fired him, since he was at fault in the incident with Edwards and did not fire Clements or Cooley, because Howell believed Clements and Cooley were equally at fault in their altercation. Archie has not identified "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in" Howell's testimony sufficient to show a reasonable factfinder could find this assertion "unworthy of credence." *See Rioux*, 520 F.3d at 1275 (citation and internal quotation marks omitted). Archie has shown only that the record contains competing accounts of the Clements-Cooley incident. Because those competing accounts reasonably could have led Howell to determine Clements and Cooley both were at fault, they do not

---

[2] This is the interpretation of the evidence most favorable to Archie, because if Archie had quit or been fired for abandoning his job, his prima facie case would fail for lack of a similarly situated employee who engaged in the same or similar conduct but did not receive similar discipline. *See Lathem*, 172 F.3d at 792.

11

satisfy Archie's burden of showing that Cockrell's reason for firing him, but not Cooley, was false, and that discrimination was the real reason. *See Brooks*, 446 F.3d at 1163; *Total Sys. Servs., Inc.*, 221 F.3d at 1176; *Elrod*, 939 F.2d at 1470-71.

In contrast, as of the moment Archie claims to have been fired, the undisputed testimony is (1) Ronald Crawford told Howell he and Archie had entered the paint booth to smoke marijuana, Archie and Nick Edwards exchanged words, Archie choked Edwards, and Crawford had difficulty pulling Archie off of Edwards; and (2) Edwards also had reported the choking incident to one or more superiors. Archie's testimony that when he called Howell from the Cockrell parking lot after the incident with Edwards, he told her "what was going on," ROA at 198, shows no implausibilities or inconsistencies in Cockrell's proffered reasons for firing him. *See Rioux*, 520 F.3d at 1275.

The fact that Cockrell asserted more than one legitimate, nondiscriminatory reason for Archie's termination, his abandoning his job and being fired for fighting at work, is insufficient to show either reason is pretextual. Employers properly may assert more than one reason for an employee's termination. *See Chapman*, 229 F.3d at 1037; *Lathem*, 172 F.3d at 793; *cf.* Fed. R. Civ. P. 8(d)(2)-(3) (authorizing defenses to be pleaded in the alternative, regardless of consistency).

Moreover, the reasons given by Cockrell for Archie's termination are not internally inconsistent. Based on the facts known to Howell immediately after

Archie's altercation with Edwards, Archie had assaulted Edwards and had left work without permission.  Because both of the reasons given for Archie's termination are supported by the facts known to Howell, neither reason is rendered unworthy of credence as a result of Cockrell's choice to assert both reasons.  *See Rioux*, 520 F.3d at 1275.  Since Archie has not shown pretext as to one of Cockrell's reasons for his termination it is irrelevant whether Archie has shown pretext as to Cockrell's additional reasons.  *See Chapman*, 229 F.3d at 1037; *see also Lathem*, 172 F.3d at 793.  Contrary to Archie's contention, Cockrell sufficiently preserved its claim that it fired Archie by arguing in its summary judgment motion that, even if Archie had been fired for his altercation with Edwards, the Clements-Cooley incident was insufficiently comparable for Title VII purposes.  The district judge did not err when she concluded Archie failed to show a genuine issue of material fact regarding Cockrell's stated reasons for terminating him, but not Cooley, were pretextual.[3]

   **AFFIRMED.**

---

[3] Given our conclusion as to pretext, we do not need to address Cockrell's additional arguments on appeal as to alternative reasons supporting an affirmance.

13