[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-14880
Non-Argument Calendar

_____

D.C. Docket No. 1:12-cv-04345-CAP

DEBRA MORRISSEY,

Plaintiff-Appellant,

versus

ASD SHARED SERVICES, LLC,
ATLANTA OUTPATIENT SURGERY CENTER, INC.,
HCA HOLDINGS, INC.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(September 17, 2015)

Before TJOFLAT, WILSON, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Debra Morrissey appeals from the district court's grant of summary judgment in favor of ASD Shared Services, LLC ("ASD"), and Atlanta Outpatient Surgery Center, Inc. ("Atlanta Outpatient"), (collectively, the "Employers") in her employment-discrimination and retaliation lawsuit filed under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-2(a)(1), 3(a).[1] Morrissey argues that she should have been permitted to amend her complaint to include claims under the Family and Medical Leave Act ("FMLA") and that there are genuine issues of material fact that preclude summary judgment on her claims of discrimination and retaliation. After careful review, we affirm.

## I.

Atlanta Outpatient and ASD were Morrissey's joint Employers.[2] Atlanta Outpatient operated multiple outpatient surgery centers in Atlanta, Georgia. ASD owned and operated central business offices that provided billing, coding, and accounts-payable support to the surgery centers.

Morrissey began working for one of these surgery centers, Atlanta Outpatient Peachtree Dunwoody ("AOPD"), in 2004. In February 2010, she

---

[1] In her complaint, Morrissey originally named a third entity, HCA Holdings, Inc., as a defendant, but the district court later found that it was not Morrissey's employer. The district court also granted summary judgment on a race-based harassment claim that Morrissey asserted for the first time in opposition to the Employers' motion for summary judgment. Morrissey does not challenge either determination on appeal, so we consider these issues abandoned. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014).

[2] This fact initially was disputed, but the Employers later amended their answer to admit that they jointly employed Morrissey.

2

transferred to a central business office based in Atlanta where she began work as an accounts-payable clerk. In August 2010, ASD closed the Atlanta office and transferred all of its operations to a central business office in Augusta, Georgia (the "Augusta-Evans CBO"). All employees of the Atlanta CBO were terminated except for Morrissey, who physically remained in Atlanta, working out of AOPD, but technically worked for the Augusta-Evans CBO and reported to its director, Robin Fearneyhough.

In June 2011, one of Morrissey's co-workers, who was not Morrissey's supervisor, referred to another employee as a "nigger bitch" during a conversation with Morrissey.[3] That same day, Morrissey reported the coworker's comment to management, who investigated the comment and, ultimately, disciplined the co-worker. In investigating the complaint, an administrator for Atlanta Outpatient, Donna Korff-Baker, called Morrissey and asked her if she and her family members were black. Morrissey felt the questions were inappropriate. The co-worker verbally accosted Morrissey for reporting the racist comment to management.

Morrissey claimed that shortly after reporting the incident, her supervisor, Fearneyhough, started "cracking down" on her. Korff-Baker also began emailing her about her work performance, leading Morrissey to believe that she had not done her job.

---

[3] Additionally, in April 2011, the co-worker made a comment to Morrissey that another employee was lazy because she was black.

Morrissey began seeing a doctor because of the stress of these events, and she took FMLA leave beginning on July 26, 2011.  On August 3, 2011, Jeff Simless, Vice President of Operations for Atlanta Outpatient, wrote in an email to Janice Sarvis, the Human Resources Manager for AOPD, regarding Morrissey taking leave,

> Her world is about to be rocked for sure. She chose exactly the worst time of the month to disappear. I have always said that you find out what kind of job a person is doing when they take time off. I can't even begin to list the firing offenses that we have found already and she just left. (Doc. 105–2 at 1).

After the closure of the Atlanta CBO in August 2010, the Employers had several discussions about eliminating Morrissey's position.  Then, in August 2011, while Morrissey was out on FMLA leave, Fearneyhough and Simless again talked about eliminating Morrissey's position and consolidating all of the accounts-payable functions in the Augusta-Evans CBO.  Also in August, Korff-Baker sent an email to Simless identifying twenty-one employees for "staffing changes." Korff-Baker suggested that Morrissey be terminated when she returned from FMLA leave.  Of the twenty-one employees, only Morrissey and another employee were terminated, although several other employees had their hours reduced.

Before she returned from medical leave, Morrissey's job duties were transferred to the Augusta-Evans CBO's accounts-payable clerk, Kimberly Kaminer, who is white.  ASD also cross-trained Susan Bailey, who is white, to

4

perform accounts-payable job duties as a back-up for Kaminer.  Bailey was a biller at the Augusta-Evans CBO and had been employed there for fifteen years.

On October 17, 2011, the Employers informed Morrissey that her FMLA leave and corresponding job-protection rights had expired.  Further, they stated, "due to business needs" they would be filling her position.

On October 31, 2011, when Morrissey returned from leave, she met with Sarvis, the HR Manager, and Fearneyhough, Morrissey's supervisor.  Sarvis informed Morrissey that her employment was being terminated and that the position was moving to the Augusta-Evans CBO.  The following day, Sarvis filed a separation notice with Georgia's Department of Labor stating that there was not enough work to employ two accounts-payable clerks.

## II.

Morrissey, who is black, filed her complaint in December 2012 in the United States District Court for the Northern District of Georgia.  A magistrate judge entered a scheduling order on February 22, 2013.  On March 25, 2013, Morrissey filed without leave of court, and without moving to amend, an "Amendment to Complaint," in which she alleged two additional claims under the FMLA for retaliation and interference.  The Employers responded that the claims were barred by Rule 15 of the Federal Rules of Civil Procedure, among other defenses.

5

On July 29, 2013, the last day of discovery, Morrissey moved for leave to file an amended complaint, asserting that good cause existed for amending her complaint after entry of the scheduling order because she learned "key information" in support of the new claims during a deposition in July 2013. She attached a proposed amended complaint asserting the two FMLA claims and several claims under state law, and also adding a new defendant. On September 3, 2013, the magistrate judge denied the motion to amend, concluding that Morrissey's motion was untimely and that she failed to show "good cause" for modifying the scheduling order under Rule 16(b), Fed. R. Civ. P., because she had not acted with diligence.

The Employers jointly moved for summary judgment in October 2013. In July 2014, the magistrate judge issued a report and recommendation recommending that the district court grant the motion for summary judgment. The magistrate judge found that Morrissey did not establish a *prima facie* case of race discrimination but that, even if she had, she did not show that the employer's stated reason for firing her—that her position was eliminated in order to cut expenses— was a pretext for race discrimination.

Morrissey filed several objections to the report and recommendation. Notably, she objected for the first time to the magistrate judge's denial of her motion to amend. Over Morrissey's objections, the district court granted summary

6

judgment to the Employers.    The court concluded that Morrissey had not established good cause to amend her complaint and that she had not established a *prima facie* case of either race discrimination or retaliation under Title VII. Consequently, the district court did not address the issue of pretext.

On appeal, Morrissey challenges the district court's grant of summary judgment to the Employers and its denial of her motion to amend.  Regarding summary judgment, Morrissey contends that she established a *prima facie* case of race discrimination and that genuine factual disputes exist over whether the Employers' proffered reason was a pretext for discrimination.  Further, she argues, she established a *prima facie* case of retaliation by showing a causal connection between her complaint about her co-worker's racist comment and her later discharge.    Finally, Morrissey asserts, she should have been granted leave to amend because she acted with diligence in obtaining discovery and seeking amendment.

## III.

"We review *de novo* a district court's grant of summary judgment, viewing all the evidence, and drawing all reasonable inferences, in favor of the non-moving party."  *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005). Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

7

matter of law." Fed. R. Civ. P. 56(a). A genuine factual dispute exists if a jury could return a verdict for the non-moving party. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1085 (11th Cir. 2004).

## A.

We begin with Morrissey's claim of race discrimination. Title VII makes it unlawful for certain employers "to discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). A plaintiff in a Title VII action may prove discrimination through either direct or circumstantial evidence. *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999).

When a Title VII disparate-treatment claim is supported only by circumstantial evidence, we generally apply the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). *Wilson*, 376 F.3d at 1087. Under this framework, the plaintiff bears the initial burden of demonstrating a *prima facie* case of discrimination, which creates a rebuttable presumption that the employer acted illegally. *Id.* If the plaintiff sets forth such a *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the employment action. *Id.* If the employer does so, the presumption of discrimination is rebutted, and the plaintiff then has the opportunity to show that the employer's proffered reason was not its

8

true reason for its action, which merges with the plaintiff's ultimate burden of showing that she was discriminated against because of her race. *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010).

## 1.

In the district court and on appeal, Morrissey and the Employers have disagreed about the appropriate *prima facie* test applicable to Morrissey's claim. "The methods of presenting a prima facie case are not fixed; they are flexible and depend to a large degree upon the employment situation." *Wilson*, 376 F.3d at 1087. The Employers contend the modified *prima facie* test created for "reduction-in-force" ("RIF") cases applies because Morrissey's position was eliminated in its entirety. *See, e.g.*, *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1331 (11th Cir. 1998); *Jameson v. Arrow Co.*, 75 F.3d 1528, 1531-32 (11th Cir. 1996). Morrissey, by contrast, argues that the standard *prima facie* test applies because she was replaced by two white women, and the Employers were hiring at the same time as the supposed RIF. *See, e.g.*, *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1185 (11th Cir. 1984).

In any case, we need not and do not resolve which *prima facie* test applies in these circumstances. Even assuming Morrissey established a *prima facie* case of race discrimination, the Employers proffered a legitimate, non-discriminatory reason for her termination—that her position was eradicated to reduce expenses

9

after a decline in business—thereby eliminating the presumption of discrimination. *See Wilson*, 376 F.3d at 1087. And after a careful review of the evidence in this case, we conclude that Morrissey has not created a genuine issue of material fact that the Employers' proffered reason was actually a pretext for discrimination. Although the district court did not address the question of pretext, this issue has been fully argued both before the district court and on appeal, and we may affirm the district court's summary-judgment ruling for any reason supported by the record. *Allen v. USAA Cas. Ins. Co.*, 790 F.3d 1274, 1278 (11th Cir. 2015); *see Cuddeback v. Fla. Bd. of Educ.*, 381 F.3d 1230, 1236 & n.5 (11th Cir. 2004) (considering the issue of pretext for the first time on appeal). For that reason, we proceed directly to the question of pretext.

## 2.

To show that a defendant's legitimate, non-discriminatory reason is a pretext for discrimination, Morrissey must "provide sufficient evidence to allow a reasonable fact finder to conclude that the proffered reasons were not actually the motivation for [her] discharge." *Standard*, 161 F.3d at 1332. In evaluating the issue of pretext, we generally look to "whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable

10

factfinder could find them unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (internal quotation marks omitted).

Here, the Employers asserted, with supporting evidence, that Morrissey's position was eliminated to reduce labor expenses once they determined that Kaminer, the accounts-payable clerk at the Augusta-Evans CBO, with another existing employee (Bailey) as her back-up, could perform Morrissey's job duties in addition to her own. The need to reduce labor expenses arose because the Employers' business declined from 2010 through 2011 while their salary costs increased over the same period.

Morrissey has not presented evidence by which a reasonable jury could conclude that this reason was a pretext for discrimination. She contends that the Employers' explanation for her termination is unworthy of credence for four reasons, none of which we find persuasive.

First, Morrissey asserts that she was the only employee in the Augusta-Evans CBO whose employment was terminated as part of the supposed RIF. However, this does not show that the Employers' need to reduce labor expenses was false. Rather, the undisputed evidence shows that, as a result of Morrissey's termination, the responsibilities of three employees (Morrissey, Kaminer, & Bailey) would be handled by two employees (Kaminer & Bailey). Moreover, the Employers had talked about eliminating Morrissey's position in Atlanta after

11

closing the Atlanta CBO in August 2010, and the accounts payable functions ADP provided to the surgery centers had been consolidated in Augusta apart from Morrissey. The fact that the Employers then eliminated Morrissey's position and fully consolidated accounts payable functions in Augusta is consistent with those two undisputed facts and not suggestive of pretext.

Second, Morrissey contends that the Employers' explanation for her termination is inconsistent, having first told her that they would be filling her position due to "business needs," but later contradicting themselves and stating that there was not enough work. While an employer's shifting explanations for an employment decision can provide evidence of pretext, *Tidwell v. Carter Prods.*, 135 F.3d 1422, 1428 (11th Cir. 1998), Morrissey's highlighted examples are insufficient to create an inference of pretext. The explanation the Employers gave Morrissey when she was terminated is consistent with the explanation they proffered in this case.

In addition, the Employers' FMLA-leave notice to Morrissey on October 17, 2011, which stated that they would be filling her position due to "business needs," is not inconsistent with transferring her job responsibilities to Kaminer and then eliminating Morrissey's position altogether. *Cf. Zaben v. Air Prods. & Chems., Inc.*, 129 F.3d 1453, 1458 (11th Cir. 1997) (concluding that differing explanations for the selection of employees to be discharged was not evidence of pretext

12

because the reasons were non-discriminatory and not "necessarily inconsistent"). The Employers did not hire a new employee to fill Morrissey's position, and "business needs" surely include the need to have the responsibilities of an absent employee covered and the need to reduce labor expenses.

Third, Morrissey asserts that the volume of work increased and the Employers were hiring but she was not considered for any jobs for which she was qualified. As a general matter, "when an employer reduces its work force for economic reasons, it incurs no duty to transfer laid-off employees to other positions within the company." *See Jameson*, 75 F.3d at 1532 (citing *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1083 (11th Cir. 1990)). Nonetheless, "where a job for which the plaintiff is qualified, and for which the plaintiff applies, is available at the time of termination, and the employer offers the job to an individual outside the protected . . . group, an inference of intentional discrimination is permissible." *Id.* Here, however, Morrissey has provided no evidence that she applied or requested to be considered for an available position around the time of her termination.

Fourth, Morrissey claims that the Employers did not follow their "standard procedure of transferring employees rather than terminating them." While "an employer's deviation from its own standard procedures may serve as evidence of pretext," *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1299 (11th

13

Cir. 2006), the testimony that Morrissey cites in support of her contention does not show that any policy regarding transfer was violated. Nor, as a general matter, would such a policy be consistent with reducing labor expenses.

Overall, Morrissey has not presented sufficient evidence, considered singly or in combination, for a reasonable jury to conclude that the Employers' stated reason for her termination was pretextual. Consequently, we affirm the entry of summary judgment in favor of the Employers on Morrissey's Title VII claim of race discrimination.

**B.**

We now turn to Morrissey's retaliation claim. Title VII prohibits private employers from retaliating against an employee because she has opposed acts made unlawful by that law. 42 U.S.C. § 2000e-3(a).

In order to establish a *prima facie* case of retaliation, Morrissey must show that (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse employment action; and (3) there was a causal link between the events. *Dixon v. The Hallmark Cos., Inc.*, 627 F.3d 849, 856 (11th Cir. 2010). "The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). "But mere temporal

14

proximity, without more, must be very close."    *Id.* (internal quotation marks omitted).

Here, we agree with the district court that Morrissey has not established *prima facie* case of retaliation.  The temporal proximity between her complaint in late June 2011 and her termination in late October 2011 is too remote to establish a causal connection on its own.[4]  *See Thomas*, 506 F.3d at 1364 ("A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough."); *Wascura v. City of S. Miami*, 257 F.3d 1238, 1248 (11th Cir. 2001) (holding that a "three and one-half month temporal proximity is insufficient to create a jury issue on causation").  The other evidence Morrissey relies on to establish a connection, such as Korff-Baker's question to Morrissey about her race and Fearneyhough's alleged "cracking down" on Morrissey, is too weak to show a causal connection between Morrissey's activity and her termination.

In any case, for the same reasons as discussed with respect to her claim of discrimination, Morrissey has not offered sufficient evidence showing that the Employers' proffered non-discriminatory reason for her termination was a pretext for retaliation.  *See Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir. 2008)

---

[4] We note that Morrissey's termination is quite close to her FMLA leave and may have been sufficient to establish a causal connection, at least as a *prima facie* matter.  However, the merits of a potential FMLA retaliation claim are not before us, for reasons we address more fully below.

(stating that once the employer offers a legitimate reason for its employment action, the plaintiff must then show that the proffered explanation is pretext for retaliation).  In short, the district court properly granted summary judgment on Morrissey's Title VII retaliation claim.

## IV.

Finally, Morrissey challenges the denial of her motion for leave to amend her complaint.[5]  We review the denial of a motion for leave to amend a complaint for an abuse of discretion.  *Covenant Christian Ministries, Inc. v. City of Marietta*, 654 F.3d 1231, 1239 (11th Cir. 2011).  A plaintiff who seeks to amend the complaint after a deadline designated in a scheduling order must demonstrate good cause under Rule 16(b) of the Federal Rules of Civil Procedure.  *S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1241 (11th Cir. 2009); *Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1418 n.2 (11th Cir. 1998).

The district court did not abuse its discretion in denying Morrissey's motion to amend her complaint.  The record supports the court's conclusion that Morrissey lacked diligence in pursuing her FMLA claims.  The basic facts on which her FMLA claims were based were known to her from the outset of this lawsuit.  For

---

[5] Arguably this issue is not properly before us.  A party may not assign as error a defect in a magistrate judge's order regarding a non-dispositive matter where the party fails to timely object. Fed. R. Civ. P. 72(a).  Morrissey did not object to the September 2013 order until August 2014.  Therefore, to the extent that the denial of a motion to amend a complaint is a non-dispositive order, Morrissey waived her right to review of that order. *See Smith v. Sch. Bd. of Orange Cty.*, 487 F.3d 1361, 1365 (11th Cir. 2007).  But since the district court ruled on her motion to amend, we will review the court's determination.

example, in her original complaint filed in December 2012, Morrissey alleged, "Plaintiff was terminated while on an approved medical leave." (Doc. 1 ¶ 24). However, she did not move for leave to amend until July 29, 2013, the last day of discovery and over five months after entry of the scheduling order.

Morrissey has not explained this delay in seeking leave to amend. She asserts that she learned key new information during a deposition earlier in July 2013, but this information relates to the Employers' corporate structure, not to the basis for her FMLA claims. Moreover, it is clear that Morrissey knew of the basis for her FMLA claims at least as early as March 2013, because she filed a putative amended complaint, without leave of court, which contained these same claims. The fact that she learned of facts relevant to those claims later in discovery does not show that they could not have been raised earlier. Consequently, the district court did not abuse its discretion in finding that Morrissey failed to pursue her FMLA claims with diligence and therefore failed to show good cause for amendment. *See Sosa*, 133 F.3d at 1419.

## V.

In sum, we affirm the district court's order granting summary judgment to the Employers, for slightly different reasons than relied upon by the court, on Morrissey's Title VII claims of race discrimination and retaliation. We also affirm the district court's denial of Morrissey's motion for leave to amend her complaint.

17

**AFFIRMED.**