[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-16788
Non-Argument Calendar

_____

D.C. Docket No. 2:14-cv-01764-KOB

R&R GROUND MAINTENANCE INC.,

Plaintiff-Appellant,

versus

ALABAMA POWER COMPANY,
THE SOUTHERN COMPANY, and
ROBERT G. GARRISON,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(October 30, 2017)

Before TJOFLAT, WILLIAM PRYOR, and MARTIN, Circuit Judges.

PER CURIAM:

R&R Ground Maintenance, Inc. ("R&R") appeals the grant of summary judgment on its claims of racial discrimination against Alabama Power Company ("APCo"), Southern Company, and Robert G. Garrison.

I.

A.

Southern Company is an electric utility holding company.  It has no employees, but has several subsidiaries, including APCo.  APCo is a utility company that provides electricity to 1.4 million customers in Alabama.

Garrison is an employee of Southern Company Services, Inc. ("SCS"), which is another subsidiary of Southern Company.  He is a manager in the group that handles the bidding on contracts for maintenance services at APCo's plants.

Earnest and Patricia Rayford are the African-American owners of R&R. They founded the company in 1986, offering cleaning services.  In 2006 they began offering lawn and maintenance services as well.  R&R twice was awarded janitorial contracts at APCo's Greene County Electric Generating Plant in Demopolis, Alabama.

When APCo decides to seek bids for contract services, an APCo or SCS manager will assemble a list of potential contractors by working with APCo's diversity program.  The manager also assembles a contract package that includes

2

specifications and conditions for the contract, a proposal form, and instructions for submitting the proposal.

The instructions in all bid packages include a warning that proposals must be submitted on time in order to be considered. The form states "IMPORTANT: If, for whatever reason, your proposal is not loaded into the Southern Company Sourcing web site by the due date and time, and you have not faxed your proposal as herein instructed, your proposal will not be considered."

Though not stated in the instructions, it was APCo's practice to allow bidders to submit documents other than proposal forms—such as compliance forms, schedules, and licenses—after the bid due date. The proposal forms contained the essential pricing information that allowed a manager to tabulate the winning bid.

The instructions presumed that the submissions would be made online, but never mandated that practice. Instead, the instructions state that "[a]fter submission of your proposal through the Southern Company Sourcing web site, but before the bid due date, a copy of the proposal should be faxed."

Submitting bids online, through SCS's vendor Emptoris, was the preferred submission method. The Emptoris web site allows contractors to access APCo bid packages. Contractors can then upload documents to the site, including proposals and any supporting documents. Once that documentation is ready, the contractor

must click "submit Draft Bid" to finalize the submission.  When Emptoris is functioning normally, APCo could not access documents uploaded to Emptoris by contractors until they clicked the button to submit a draft bid.  After this suit was filed, APCo discovered a glitch in Emptoris that allowed it to access draft bids documents.  The documents were accessible in a portion of the website that was not typically used when reviewing bids, and APCo was unaware of this function at the time the bids at issue here were submitted.  APCo also accepted bids through fax, mail, and hand delivery, but not by email.

Once the bid deadline had passed, an APCo or SCS manager would tabulate the overall price of each bid.  This tabulation would vary depending on whether the proposal includes fixed price work or unit pricing, as well as other costs.  Once the prices were tabulated, managers at the APCo plant would make a final decision on which supplier would be awarded the contract.

### B.

In August 2013 the Greene County plant decided to solicit bids for a landscape-maintenance contract.  The maintenance work at the plant had been performed by DKH, LLC, which is not a minority-owned business.  DKH had performed this work since 1997, except for a brief period in 2004 during which APCo hired another firm, but then quickly returned to DKH as its preferred contractor.  APCo managers asserted that DKH generally performed good work

4

and was available on short notice.  Nonetheless APCo wanted to solicit bids since the overall cost of the contract was high.

APCo solicited bids for the Greene County plant from four contractors, including R&R and DKH.  While R&R had not previously performed landscaping or lawn-care work, it had been awarded the janitorial contract at the plant from 2006 through 2012.

The bid inquiry package described a three-year contract for landscape maintenance and general plant-cleaning work.  In addition to the typical bid instructions, the package stated that "Contractor shall furnish with its Proposal evidence that it possesses all appropriate licenses required for application of pesticides, insecticides, herbicides and rodenticides, as well as any other applicable licenses required by the state related to landscaping services hereunder."  The chemical-spraying tasks had not been included in previous maintenance contracts at the Greene County plant.  The bid due date was October 11, 2013 at 11:00 AM.

On October 3, 2013, Garrison conducted a pre-bid meeting for the Greene County contract.  He told the contractors they had to determine for themselves which licenses and permits they'd need for the work.  He also stated that they "just need the pricing portion of the proposal form and those compliance forms.  You got other things you need to attach to that, that's fine.  You can get that to us later.

5

We'll be glad to take that afterwards, but we do have to have the pricing and the, the pricing portion before [] 11:00."

Two days before the bid deadline, DKH submitted its proposal via fax. The proposal did not include any licensing information, and at the time DKH did not possess the appropriate licenses. R&R submitted a timely bid through Emptoris, complete with licenses.

DKH's proposal for firm price work was significantly lower than R&R's, though R&R proposed lower hourly rates. Garrison tabulated the overall bid prices by looking only at the firm price work because hourly work "was not expected to be a large part of the contract." For that reason he reported to plant management that DKH was the lowest bid.

However, APCo would not award a contract unless the contractor had proper licenses. APCo waited nearly a month for DKH to acquire those licenses before awarding it the contract.

C.

In November 2013, APCo solicited bids for a landscape-maintenance contract covering three power plants: E.C. Gaston, Gorgas, and Miller (collectively "GGM"). APCo hoped to reap the economic benefit of bundling the contract for the three plants, but retained the right to award the work at each plant to different contractors.

6

Again, R&R was one of four contractors whom APCo solicited for bids. The due date for the bid was November 6, 2013 at 11:00 AM. On November 5, Landcrafters, Inc., a woman-owned small business that had previously performed landscaping maintenance on the expiring GGM contract, submitted a bid through Emptoris.

At 10:23 AM on November 6, Earnest Rayford received an email stating that R&R's bid documents had been uploaded—but not submitted—to Emptoris. He received a second email seven minutes later saying the application had been "updated," though R&R had not taken any actions in that interval. Rayford then logged back on to Emptoris, but was unable to open the documents that had been uploaded. He phoned Emptoris and tried using an alternative login to view the documents, but could not do so. With the 11:00 AM deadline approaching, he tried faxing the application to APCo, but received an error message all four times. At 11:00 AM he received an email from Emptoris that the bidding window had closed. At 11:10 AM Rayford finally succeeded in sending a fax to APCo, though it contained only a blank sheet of paper.

When APCo checked Emptoris at 11:00 AM, R&R's bid remained in draft status. It had not received any fax from R&R. At 2:28 PM an APCo representative emailed R&R stating that it had not received a timely bid from R&R

7

and therefore R&R was not eligible for the contract.  APCo ultimately awarded the contract to Landcrafters, the only contractor who had submitted a timely bid.

### D.

R&R sued in the U.S. District Court for the Northern District of Alabama, alleging racial discrimination in the making and enforcing of contracts. Defendants moved for summary judgment, arguing that there was no evidence of racial discrimination.  Defendants also argued that there were no direct allegations against Southern Company, and that Garrison played no role in the GGM contract.

The district court granted summary judgment.  First, it found that summary judgment was warranted for Southern Company because it is a "holding company with no employees" and R&R had put forward "no evidence that any of the alleged acts of discrimination were performed on behalf of" the company.[1]  Next, for the Greene County contract, the court assumed that R&R had established a prima facie case of discrimination but found APCo had legitimate, nondiscriminatory reasons for awarding the contract to DKH.  Those reasons were DKH's history of performing satisfactory work and its lower fixed-price bid.  For the GGM contract, the court found that R&R had not shown it met the requirements for the contract because it did not submit a timely bid.  The court also found that APCo had a legitimate, nondiscriminatory reason for awarding the contract to Landcrafters.

---

[1] The district court also found that R&R abandoned any claims against Southern Company by failing to respond to that portion of defendants' summary judgment motion.

Finally, the court found that R&R had not submitted sufficient evidence to raise an overall inference that defendants intentionally discriminated based on race.

R&R appealed.[2]

## II.

We review de novo the district court's grant of summary judgment. Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1314 (11th Cir. 2011). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We "view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-movant." Carter v. City of Melbourne, 731 F.3d 1161, 1166 (11th Cir. 2013) (per curiam) (quotation omitted).

Under 42 U.S.C. § 1981(a), all people "have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." A claim of racial discrimination under § 1981 "requires proof of intentional discrimination." Brown v. Am. Honda Motor Co., 939 F.2d 946, 949 (11th Cir. 1991). Where there is no direct evidence of discrimination, the Court employs the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93

---

[2] On appeal, R&R made no mention in its briefs or other filings of the portion of the district court's order that granted summary judgment to Southern Company. Therefore that issue is not before us and we will not address it. See Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 680 (11th Cir. 2014).

9

S.Ct. 1817 (1973) and its progeny.  See Flournoy v. CML-GA WB, LLC, 851 F.3d 1335, 1339 (11th Cir. 2017).[3]

Under this framework, a plaintiff must first establish a prima facie case of discrimination by showing "that the plaintiff is a member of a minority group, that he submitted an application or bid which met the requirements for an available contract, that the application or bid was ultimately rejected, and that the contract was eventually given to an individual who is not a member of a protected class." Brown, 939 F.2d at 949.  If a plaintiff establishes a prima facie case, then the burden shifts to the defendant to "rebut th[e] presumption [of discriminatory intent] by producing evidence of a legitimate, nondiscriminatory reason for its action." Flournoy, 851 F.3d at 1339.  If the defendant meets its burden, then "plaintiff must establish that defendant's proffered reason is but a pretext for unlawful discrimination." Id.

"However, establishing the elements of the McDonnell Douglas framework is not, and never was intended to be, the sine qua non for a plaintiff to survive a summary judgment motion." Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011).  Even if the plaintiff's claims fail under the burden-shifting framework, "[a] triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence

---

[3] While McDonnell Douglas addressed a claim under Title VII, courts use the same analysis for claims under § 1981.  Brown, 939 F.2d at 949.

10

that would allow a jury to infer intentional discrimination by the decisionmaker."

Id. (quotation and footnote omitted); see also Wilson v. B/E Aerospace, Inc., 376

F.3d 1079, 1088 (11th Cir. 2004) ("A plaintiff may prevail on an employment

discrimination claim by either proving that intentional discrimination motivated the

employer or producing sufficient evidence to allow a rational trier of fact to

disbelieve the legitimate reason proffered by the employer, which permits, but does

not compel, the trier of fact to find illegal discrimination.")

### III.

### A.

We agree with the district court that R&R has established a prima facie case

of discrimination under the McDonnell Douglas framework for the Greene County

contract, and the parties did not question that aspect of the district court's decision.

In turn, APCo proffers two nondiscriminatory reasons for awarding the contract to

DKH over R&R: DKH's history of satisfactory work and its lower-price bid.  R&R

argues that these reasons are pretext for discrimination.

"If the proffered reason is one that might motivate a reasonable employer, a

plaintiff cannot recast the reason but must meet it head on and rebut it."  Wilson,

376 F.3d at 1088.  This requires evidence "sufficient to permit a reasonable

factfinder to conclude that the reasons given by the employer were not the real

reasons for the adverse [] decision."  Combs v. Plantation Patterns, 106 F.3d 1519,

11

1528 (11th Cir. 1997). This can be done by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Id. at 1538 (quotation omitted). A defendant's failure to follow its own policies, as well as selective application or enforcement of its policies, can be evidence of pretext. See Morrison v. Booth, 763 F.2d 1366, 1374 (11th Cir. 1985) ("Departures from normal procedures may be suggestive of discrimination.").

R&R first questions whether DKH's past performance is relevant because "[n]o evidence was offered that DKH performed chemical spraying work in the past for [APCo]." While chemical spraying was a new component of the landscape maintenance contract, the rest of the work had been successfully performed by DKH since 1997. APCo managers testified that DKH performed its job well, was available for work on short notice, and that after briefly having another firm perform the landscape maintenance work in 2004, APCo returned to DKH as its preferred contractor. The fact that the new contract added additional requested services did not negate DKH's sixteen-year history with APCo.

R&R next questions whether DKH was truly the low-price bidder because R&R bid lower hourly rates. It is undisputed that R&R bid lower hourly rates while DKH had a lower bid for fixed-price work. Garrison testified that fixed-

price work was expected to be a larger component of the contract. While R&R submitted some evidence that hourly work ended up being a large portion of the contract in 2014 and 2015, there is no evidence to discredit Garrison's contention that, when the contract was bid in 2013, fixed-price work was expected to be the primary component of the contract.

Outside of the proffered reasons, R&R argues that acceptance of DKH's bid is evidence of discrimination and pretext because DKH's bid did not conform to the stated requirements. While evidence of broken policies can evince discrimination or pretext, APCo did not break any policies in awarding the contract to DKH. The bid instructions make clear that no late submissions will be accepted. Those instructions also specify to contractors that that if "your proposal is not loaded into the Southern Company Sourcing web site by the due date and time, and you have not faxed your proposal as herein instructed, your proposal will not be considered." This instruction doesn't make clear whether sending a fax alone is an acceptable method of submitting a bid.

Garrison testified that, although online submission was the preferred method, it was the practice and policy of APCo to accept submissions through fax alone. R&R has put forward no evidence to challenge this policy, and in fact acknowledged during a deposition that it knew submissions could be made by fax. Therefore there is no evidence that APCo broke its own policies by accepting a bid

13

from DKH that had been faxed before the submission deadline but was not submitted online.

R&R further contends that APCo broke its policies by giving DKH a month to submit state licenses when those should have been part of the initial bid. Again, R&R has not demonstrated that APCo broke any internal policies. Garrison testified that it was the practice and policy of APCo to accept supporting documentation after the bid submission date, so long as the initial bid package and pricing information were timely submitted. He pointed to specific instances where contractors were given time to submit compliance forms, schedules, and licenses after they had submitted a timely bid proposal. R&R offered no evidence to refute this practice.

Because R&R cannot demonstrate that APCo's proffered reasons are pretext for discrimination, its claim fails under the McDonnell Douglas framework. Outside of that framework, R&R has not offered evidence to create a triable issue of fact. See Smith, 644 F.3d at 1328. Among the two timely bids, APCo awarded the contract to the lower-price bidder, a company who also had a history of good performance. These facts create no inference that APCo intentionally discriminated based on race in awarding the Greene County contract.

14

B.

To establish a prima facie case of discrimination for the GGM contract, R&R must show that it met the requirements to be eligible for the contract. See Brown, 939 F.2d at 949. It is undisputed that R&R did not finalize its bid on Emptoris before the bid deadline, nor did it submit its bid by mail or hand delivery. R&R attempted to fax the bid to APCo, but was able to send only blank pages to APCo, which were received after the deadline.

R&R argues that APCo had access to R&R's bid in Emptoris, despite the fact that it remained in draft status. However, R&R cannot demonstrate that APCo knew it had access to that draft bid. Garrison testified that APCo learned only after this suit was filed of a glitch in Emptoris that allowed access to draft bids. He further testified that the draft bids were not on the portion of the website typically used when reviewing bids. R&R has offered no evidence that could establish that APCo knew it could access draft bids at the time the bids were due.

Because its bid did not meet the stated requirements, R&R cannot demonstrate a prima facie case of discrimination. R&R has also not put forth sufficient circumstantial evidence that would lead to a reasonable inference of intentional discrimination. See Smith, 644 F.3d at 1328. All invited suppliers were warned of the strict deadline for submitting a bid proposal, and APCo ultimately awarded the contract to the only firm that successfully submitted a

15

timely bid.  Under these circumstances, no reasonable jury would find that APCo intentionally discriminated based on race in awarding the GGM contract.

## C.

R&R further argues that regardless of whether there was evidence of discrimination for each individual contract, the juxtaposition of the two decisions creates an inference of intentional discrimination.  It posits that APCo allowed DKH to break the bidding rules by not timely submitting licenses for the Greene County contract while APCo vigorously enforced the bid deadline against R&R on the GGM contract.

R&R's argument is based on the idea that APCo bent the rules for DKH, but not for R&R.  See Morrison, 763 F.2d at 1374.  As previously discussed, the evidence does not establish that APCo broke with any policies in allowing DKH to submit licensing information after it had submitted a timely bid proposal.  And in both decisions APCo awarded the contract to a firm that submitted a timely bid proposal per its rules and policies.  Viewing these two decisions together, along with the other evidence in this case, a reasonable factfinder would be unable to infer that APCo intentionally discriminated on the basis of race.  See Smith, 644 F.3d at 1328; Wilson, 376 F.3d at 1088.

**AFFIRMED.**

16