[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-10725
Non-Argument Calendar
_____

D.C. Docket No. 4:16-cv-00249-CDL


MICHAEL B. BROWN,

Plaintiff – Appellant,


versus


SYNOVUS FINANCIAL CORPORATION,

Defendant - Appellee.


_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(August 19, 2019)

Before JILL PRYOR, NEWSOM and ANDERSON, Circuit Judges.

PER CURIAM:

Michael Brown, proceeding *pro se*, appeals the district court's grant of summary judgment in favor of his former employer, Synovus Financial Corporation ("Synovus"), in his race discrimination suit.[1]  Brown also appeals the district court's denial of his motion "to Set Aside the Order" under Federal Rule of Civil Procedure 60(b), which the court construed as a Federal Rule of Civil Procedure 59(e) motion.  After careful review, we affirm the district court.

## I.    BACKGROUND

Brown is an African-American man, who, at the time of this lawsuit, conducted internal audits for Synovus.[2]  Synovus hired Brown as a Senior Auditor in 2007.  One year later, Synovus promoted him to Audit Manager and assigned Keith Greene as his supervisor.  In 2010, Synovus designated Sandra Weekley as Brown's primary supervisor.  Weekley reported to Andy Cottle.

---

[1] Brown brought claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), and 42 U.S.C. § 1981.  Because discrimination claims brought under Title VII and § 1981 "are subject to the same standards of proof and employ the same analytical framework," we apply that framework to address both claims. *Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009).

Even though Brown's complaint also purported to allege a retaliation claim under Title VII, the district court implicitly determined that Brown had adequately pled only race discrimination—not retaliation—claims.  Brown abandoned his retaliation claim by not briefing it on appeal, so we do not address it. *See Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) (determining that where an issue is abandoned, this court "do[es] not address its merits").

[2] The district court's November 28, 2017 order granting summary judgment to Synovus contains a thorough recitation of the facts of this case.  We thus include here only those facts necessary to the disposition of Brown's appeal.

2

As an Audit Manager, Brown was required to test assigned controls for audits, confer with management, collect documentation, and create audit reports listing his findings and conclusions.  Brown had to follow Synovus's departmental standards, which included:  documenting his work accurately and contemporaneously, completing projects by their assigned deadlines and within budgeted audit-hours, noting his findings and conclusions clearly, and performing work within its assigned scope.

Brown's employment with Synovus was marked by consistent negative reviews from his supervisors.  Even though his initial evaluations of Brown were largely positive, Greene soon began to identify what he considered to be serious problems with Brown's performance.  In 2009, Greene noted that Brown struggled to complete his work in a timely manner; what work Brown produced contained "frequent and sloppy errors such as misspellings and incomplete sentences" and required "re-work" before it could be used.  Doc. 39-3 at 370.[3]  Greene also noted that Brown failed to keep managers apprised of his progress, exceeded budgeted audit-hours, and produced unclear work that failed to comply with department standards.  From 2010 through 2012, Weekley gave Brown increasingly negative reviews.  Weekley's stated foremost concern was Brown's failure or refusal to update management on audit progress, including his failure to upload and

---

[3] Citations in the form "Doc. #" refer to numbered entries on the district court's docket.

document his work.  In formal reviews, she described Brown's work as "often hard to follow," requiring "multiple revisions," and failing to "meet the minimum expected standards of the job."  Doc. 36-4 at 101, 120.  Weekley also remarked that although Brown was "consistently above" Synovus's 75% productivity goal, that metric was an inaccurate measure of the timeliness or efficiency of his work for two reasons:  Brown (1) spent excessive time on his audits and (2) failed to timely document his progress.  Doc. 36-4 at 110.  Despite poor evaluations, Brown received multiple merit pay raises:  1.5% in 2011, 2% in 2012, and 1% in 2013.  Weekley testified by declaration, however, that these merit raises were among the lowest on her team and that Brown's 1% raise was the lowest she had ever recommended.

According to Brown, his managers' criticisms were baseless.  Brown believed that he completed and documented his work in a timely manner.  He described his work as "high quality" and "not requir[ing] re-work" by his supervisors.  Doc. 39-3 at 228.

In late 2012, Brown was assigned to Synovus's 2012 Financial Reporting Audit.  He objected to having his name listed among the authors of the final report because he was assigned menial tasks (such as pulling documents) rather than audit tests.  Synovus disregarded Brown's objection and listed his name on the report.

4

Also in late 2012, Weekley took two steps to address Brown's performance: she met with Brown for daily coaching sessions over a roughly two-month period, and she contacted Human Resources to discuss issuing Brown a Performance Improvement Plan ("PIP").

Synovus then placed Brown on a 45-day PIP.  The PIP, in part, stated that Brown was not meeting minimum expected standards of his job with regard to the quality of his audits and his communications.  The PIP required Brown to improve communication, timeliness, and quality of work and sustain acceptable performance after the conclusion of the PIP.  Brown believed that the PIP was a baseless "cover up" for the decision to list his name and credentials on Synovus's 2012 Financial Reporting Audit.  Doc. 39-1:7-8.  Nonetheless, Brown successfully completed his PIP in early 2013.

In mid-2013, Weekley met with Brown and told him his performance was again worsening.  After consulting with her superiors, Weekley decided to terminate Brown's employment, effective early 2014.  In the interim, Weekley and Cottle emailed about Brown's performance.  In a formal comment on his 2012 evaluation, Brown had written:  "False and misleading evaluator(s) [sic] comments fail to validate the evaluator(s) [sic] ambitious rating."  Doc. 36-4 at 121.  Cottle wrote in an email to Weekley that he "did not understand that statement" and asked what it meant.  Doc. 39-3:120.  Weekley responded, "Your guess is as good as

5

mine." *Id.* Cottle replied: "I don't think he was finished with language training when he was thrown from the mother ship." *Id.*

Brown was fired in early 2014. After the Equal Employment Opportunity Commission issued him a right-to-sue letter, Brown sued Synovus.[4] In his complaint, Brown alleged that Synovus held him to a different standard than his white coworkers and terminated him for actions his white coworkers engaged in without consequence.

Synovus moved for summary judgment. It argued that Brown could not establish a *prima facie* case of discrimination under the *McDonnell Douglas*[5] burden-shifting standard because he failed to identify any similarly situated comparators. Even if Brown could establish a *prima facie* case, Synovus contended, he could not establish that Synovus's legitimate, non-discriminatory reason for his termination—poor performance—was a pretext for discrimination. Synovus explained that despite Brown's managers' counseling, his supervisor's coaching, and the PIP, he had failed to meet deadlines, given false status reports, exceeded budgeted audit-hours on projects, submitted work with unsupported

---

[4] Around the same time, Brown filed a counseled whistleblower complaint with the Occupational Safety and Health Administration ("OSHA"), claiming that Synovus retaliated against him after he complained about potential Sarbanes-Oxley violations. OSHA dismissed his complaint, Brown moved for reconsideration, and the Administrative Review Board dismissed Brown's petition as untimely and denied his motion for reconsideration. In a companion case, we affirmed the Board. *See Brown v. Sec'y of Labor*, 739 Fed. App'x 978 (11th Cir. 2018) (unpublished).

[5] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).

conclusions, and exceeded the scope of assigned audits.  In support of that explanation, Synovus pointed to annual evaluations, coaching notes, and the PIP stating that Brown failed to upload his workpapers, did not update management on audit progress, regularly exceeded budgeted audit-hours without authorization or explanation, created faulty work product, and withheld information from team members.

The district court granted Synovus summary judgment.  The court explained that Brown failed to make out a *prima facie* case of discrimination because he failed to identify any similarly situated comparators.  The court also decided that even if Brown could show a *prima facie* case of discrimination, he failed to show that Synovus's legitimate non-discriminatory reason for his termination—poor performance, including his failure to produce on-time, within-budget, and adequate quality work and his failure to communicate his progress on his assignments—was a pretext for intentional discrimination.

Brown subsequently filed a "60(B)(1)(3) Motion to Set Aside the Order." Doc. 51 at 1.  Construing Brown's motion as a motion for reconsideration under the district's Local Rule 7.6, the district court denied the motion.  The district court later vacated that order, issued a new order construing Brown's motion as a motion for reconsideration under Rule 59(e), and denied that motion.  Brown again moved

for relief under Rule 60(b); the court also denied that motion. Brown timely appealed.

## II.    STANDARDS OF REVIEW

We review *de novo* the district court's grant of summary judgment, construing the facts and drawing reasonable inferences in the light most favorable to the nonmoving party. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1291-92 (11th Cir. 2012). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

When a district court makes a finding of fact that the defendant's proffered reason for termination was not pretextual, we reverse only where that factual finding was clearly erroneous. *See Fowler v. Blue Bell, Inc.*, 737 F.2d 1007, 1012 (11th Cir. 1984).

We review for abuse of discretion the denial of a Rule 59(e) motion. *Mincey v. Head*, 206 F.3d 1106, 1137 (11th Cir. 2000). We also review for abuse of

8

discretion the denial of a Rule 60(b) motion.  *See Cano v. Baker*, 435 F.3d 1337, 1341-42 (11th Cir. 2006).

## III.    DISCUSSION

We affirm the district court's grant of Synovus's motion for summary judgment.  Brown failed to demonstrate that Synovus's explanation for his termination was a pretext for discrimination.  The district court did not abuse its discretion in denying Brown's motion to set aside its order granting summary judgment.

### A. Race Discrimination Claims

"A plaintiff may prove a claim of intentional discrimination through direct evidence, circumstantial evidence, or statistical proof."  *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010).  When, as here, an employee bases his claim of discrimination on circumstantial evidence, we apply the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004).  Under the *McDonnell Douglas* framework, the employee may establish a *prima facie* case of discrimination by showing that:  (1)  he belongs to a protected class, (2)  he was subjected to an adverse employment action, (3)  his employer treated similarly situated employees outside his classification more favorably, and (4)  he was qualified to do the job.  *Id.* at 1091.  If the employee

9

makes this showing, a presumption arises that the adverse action was discriminatory. *Id.* at 1087. The burden then shifts to the employer to rebut the presumption by articulating a legitimate and nondiscriminatory reason for the adverse action. *Id.* If the employer carries its burden, the burden returns to the employee, who must show that the employer's stated reason was pretext for discrimination. *Id.* The employee may survive summary judgment only if he both rebuts his employer's proffered reason directly, *see id.* at 1088, and puts forth enough evidence from which a jury could conclude that the real reason was unlawful discrimination,[6] *see Flowers v. Troup Cty., Ga., Sch. Dist.*, 803 F.3d 1327, 1339 (11th Cir. 2015).

### 1. Brown Failed to Show that Synovus's Proffered Reason Was Pretext for Unlawful Discrimination.

Even assuming Brown satisfied the first step of the *McDonnell Douglas* framework by identifying valid comparators, Synovus articulated a legitimate, non-discriminatory reason for its decision to terminate Brown: poor performance. Beginning in 2009, Greene notified Brown that he needed to produce work in a timely manner, without sloppy errors, and without requiring re-work before it

---

[6] If an employee cannot establish each *McDonnell Douglas* element, he can still avoid summary judgment by presenting "a convincing mosaic of circumstantial evidence that would allow a jury to infer international discrimination by the decisionmaker." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (internal quotation marks omitted). Brown has not argued that he presented a "convincing mosaic" of evidence that would allow an inference of racial discrimination, so we do not address it.

10

could be used.  From 2010 through 2012, Weekley warned Brown that his work was produced without updates to his managers on progress, was disorganized, and exceeded budgeted audit-hours.  She also warned Brown that he still failed to produce work in a timely manner and his work continued to require re-work before use.  Weekley continued to address Brown's poor performance in coaching sessions held each week.  The PIP reiterated Brown's performance shortcomings.  After Brown completed the PIP in September 2013, Weekley warned Brown one final time of his poor performance before terminating him in early 2014.  Because the district court found that the Synovus's proffered reason was not pretextual, we may reverse that factual finding only if it was clearly erroneous.  *Fowler*, 737 F.2d at 1012.

Brown failed to demonstrate both that Synovus's reason was false and that discrimination was the real reason.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993).  We start with Brown's attempts to rebut Synovus's reason.  First, Brown contends that his merit-based raises and his above-75% productivity rating contradicted Weekley's low performance evaluations, post-termination statements, and the PIP.  But Weekley testified that Brown's 1% pay increase was the lowest raise she had ever approved and explained that Brown's productivity rating did not reflect his timeliness; it only meant he spent more time on audit work than non-audit work.  Second, Brown's own assessment of his performance as exceeding

11

expectations was insufficient to show pretext.  *See Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997) *abrogated on other grounds by Lewis v. City of Union City*, *Ga.*, 918 F.3d 1213 (11th Cir. 2019)  (When an employer has presented evidence of poor performance, "an employee's assertions of his own good performance are insufficient to defeat summary judgment.")  Third, Brown argues that Greene's initial positive performance reviews and subsequent characterization of Brown's work as unreliable cast doubt on Synovus's proffered reason.  Even though Greene's reviews of Brown grew increasingly negative over time, a manager's evolving opinion of an employee's performance, without more, reveals nothing discriminatory.[7]

Brown also failed to demonstrate that discrimination was the true reason for his termination.  *See St. Mary's,* 509 U.S. at 515.  His main argument is that Cottle's "mother ship" comment evidenced Synovus's discriminatory intent.  Brown has failed to show that this January 2013 remark had any relation to his January 2014 termination.  The fact that Cottle's comment was made nearly a year before Brown's termination undercuts Brown's argument that the comment demonstrated pretext.  Nor did Brown put forward any other evidence connecting

---

[7] In a related argument, Brown contends that Greene's participation in Brown's 2012 PIP and his 2014 termination demonstrated Synovus's discriminatory intent.  He has failed to substantiate that contention.  He identified no evidence explaining how Greene's participation impacted Brown's evaluations and termination, and he made no argument why a former manager's involvement with his employee's PIP or termination would be improper—much less demonstrate racial animus.

12

Cottle's comment to Synovus's decision to terminate him.  Cottle's comment, although insensitive, is insufficient alone to establish racial animus.  *See Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1229 (11th Cir. 2002) ("Although a comment unrelated to a termination decision may *contribute* to a circumstantial case for pretext, it will usually not be sufficient absent some additional evidence supporting a finding of pretext." (internal citation omitted)).

Brown's additional arguments regarding Synovus's discriminatory intent, unsupported by the record, do not persuade us.  Brown contends that the PIP was partially motivated by his complaint regarding the 2012 Financial Reporting audit, but the undisputed evidence shows that the PIP was drafted before the audit began.  And we find no record support for Brown's contentions that his supervisors "intentionally and racially excluded" him from working on the 2012 audit and assigned him to "re-review[] and agree[]" with his "white team members[']" opinions.  Appellant Br. at 15-16.  Brown further argues that the PIP alone constituted discriminatory animus, but we cannot agree, because the PIP reflected his supervisors' longstanding and well-documented concerns regarding Brown's performance.

Brown failed to rebut Synovus's proffered reason for his termination and failed to demonstrate that discrimination was the true reason.[8]  The district court properly granted Synovus summary judgment on Brown's race discrimination claims.[9]

## 2. Brown Cannot Succeed on Direct Evidence and Statistical Proof Theories.

Brown argues that even if his race discrimination claims fail based on circumstantial evidence, he can still avoid summary judgment under two other theories.  First, he argues that we should consider Cottle's "mother ship" remark and his accompanying "discriminatory" actions to be direct evidence of discrimination.  Second, Brown argues that he raised, and we should consider, statistical proof of discrimination.  For the following reasons, we reject both arguments.

---

[8] Brown argues that Synovus treated similarly situated employees more favorably, evidencing discrimination.  But because Brown has failed to identify comparators who are "similarly situated in all material respects," we cannot infer discrimination from Synovus's treatment of his colleagues.  *See Lewis*, 918 F.3d at 1218; *Silvera v. Orange Cty. Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001).  None of Brown's colleagues constitute comparators because they occupied different positions, had different certifications, or worked for different supervisors than Brown.  Moreover, there is no record evidence that any of Brown's colleagues had such negative performance reviews or comparable continuing, serious performance deficiencies.  Brown's arguments thus fail to support his claim of discrimination.

[9] Brown also argues that the district court failed to view the evidence in the light most favorable to him and ignored his challenges to Synovus's proffered reason for his termination.  Our review of the record reveals that the district court correctly construed the evidence in Brown's favor and adequately addressed Brown's attempts to rebut Synovus's proffered reason.

We start with the direct evidence argument.  We have explained that "blatant remarks, whose intent could mean nothing other than to discriminate [based on race]" constitute direct evidence.  *Akouri v. State of Fla. Dep't of Transp.*, 408 F.3d 1338, 1347 (11th Cir. 2005).  But Cottle's "mother ship" remark was not a "blatant remark, whose intent could mean nothing other than to discriminate" based on race.  *Id; see also Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997) (evidence subject to more than one interpretation does not constitute direct evidence of discrimination).  Because there is another reasonable, non-discriminatory interpretation of Cottle's comment—that it refers to a space ship—that comment does not constitute direct evidence of discrimination.  *See Merritt*, 120 F.3d at 1191.  And Brown presented nothing else that could be construed as direct evidence of discrimination.  The district court thus did not abuse its discretion in declining to consider Brown's direct evidence theory.

Additionally, Brown argues that he submitted statistical proof of discrimination.  Like the district court, we read "statistical proof" to refer to his argument that Synovus maintained a "culture of discrimination" and engaged in "disparate treatment" that had a "disparate impact."  Doc. 39-1 at 19; Doc. 49 at 14 n.2.  Because Brown presented no evidence of disparate treatment or disparate impact based on statistical proof, however, the district court did not abuse its discretion in rejecting his arguments.

15

## B. Brown's Post-Judgment Motions

Brown argues that the district court erred by improperly construing his Rule 60(B)(1)(3) motion as a Local Rule 7.6 motion, then a Rule 59(e) motion, and then denying that motion.[10]  We reject his arguments.

As an initial matter, the district court correctly construed Brown's motion as a Rule 59(e) motion.  A *pro se* party's characterization of his motion is not controlling; the court must determine under which remedial framework to construe the motion.  *United States v. Jordan*, 915 F.2d 622, 624-25 (11th Cir. 1990) (explaining that courts must look behind *pro se* party's label of a motion to determine whether the motion is cognizable under a different remedial framework).  Rule 59(e) applies to motions for reconsideration of matters that are encompassed in a decision on the merits of the dispute; Rule 60 applies to motions for reconsideration of matters collateral to the merits.  *Finch v. City of Vernon*, 845 F.2d 256, 258 (11th Cir. 1988).  Because Brown's motion went to the merits of the dispute, the district court properly construed his motion as one brought under Rule 59(e).

---

[10] Brown's argument that the district court erred by improperly construing his motion as a motion for reconsideration under Local Rule 7.6 is moot because the district court vacated its order so construing the motion.

Brown further argues that the district court erred by failing to consider the Rule 60(b) criteria.  This argument is without merit because the district court explicitly considered those criteria in denying his second motion for reconsideration.  *See* Doc. 57 at 1-2.

16

Brown failed to meet the standard for a Rule 59(e) motion.  A Rule 59(e) motion must be based upon "newly-discovered evidence or manifest errors of law or fact."  *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007).  It may not be used to relitigate old matters or raise argument or present evidence that could have been raised prior to the initial entry of judgment.  *Id.*  In his motion, Brown argued that the district court had erred in granting Synovus summary judgment by:  (1) failing to recognize his properly identified comparators; (2) overlooking relevant circumstantial evidence of Synovus's intentional discrimination against him; (3) not considering four additional emails, attached to the motion, that Brown failed to submit previously despite having them in his possession; and (4) deciding the case without a full and fair presentation of evidence, on account of Synovus's alleged false representations throughout the proceedings.  Brown failed to raise new evidence because the four emails he attempted to submit were in his possession and therefore not "new" for the purposes of Rule 59(e).  *See Arthur*, 500 F.3d at 1343 (concluding that proffered evidence that could have been discovered previously was not "newly discovered" within the meaning of Rule 59(e)).  Further, Brown failed to substantiate his contention that Synovus made false representations.  And he identified no manifest errors of law or fact.  The district court thus did not abuse its discretion in denying Brown's motion "to Set Aside the Order" because he presented no grounds for reconsideration under Rule 59(e).

17

## IV.    CONCLUSION

For the foregoing reasons, we affirm the district court's order granting summary judgment to Synovus and denying Brown's motion to set aside the judgment.

**AFFIRMED.**