[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-10912

Non-Argument Calendar

_____

EDGAR EVANS,

Plaintiff-Appellant,

versus

BIRMINGHAM HIDE & TALLOW COMPANY INC.,
d.b.a. BHT Resources,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:19-cv-00769-SGC

_____

Before ROSENBAUM, LAGOA, and ANDERSON, Circuit Judges.

PER CURIAM:

Edgar Evans, an older African-American man, appeals the grant of summary judgment to his former employer, Birmingham Hide & Tallow Co. Inc., d.b.a. BHT Resources ("BHT"), on his claims of race discrimination under Title VII of the Civil Rights Act of 1964 and age discrimination under the Age Discrimination in Employment Act.  After careful review, we affirm.

## I.

BHT is in the business of rendering animal by-products and recycling grease and oil from restaurants.  From 2010 to 2018, Evans drove a grease truck for BHT, collecting grease and oil to be recycled from restaurants.  In that role, he was supervised by Greg Oxley, a regional vice president.

Around the time Evans turned 65 in December 2017, Oxley began to call him "old man" and asked how long he planned to work.[1]  Even after Evans said he planned to work until 67, Oxley continued to ask about retirement and said he wanted advance notice of when Evans planned to retire so he could "make sure he had

_____

[1] Oxley admitted calling Evans "old man" but claimed it was a joke because he and Evans were close in age.

somebody to replace [Evans]." At that time, Evans was Oxley's oldest grease truck driver.

Oxley had sole responsibility for the investigation of and discipline for accidents involving the truck drivers he supervised. When investigating accidents, Oxley applied a framework under which an accident was "chargeable"—that is, one resulting in discipline for the BHT driver—only when the accident caused personal injury or damage to a third-party's property *and* the BHT driver was at fault. If the accident was on BHT property or the driver was not at fault, the accident was not "chargeable" for purposes of imposing discipline. Oxley also stated that he typically did not consider spills from open-top trucks to be chargeable. These distinctions were not reflected in BHT's employment or training manuals. Rather, Oxley testified he exercises his discretion in making these determinations. Oxley said he treated accidents on customer property more seriously because they harmed customer relationships.

Over his eight years with BHT, Evans had a total of five accidents that Oxley determined were chargeable. The record contains contemporaneous write-ups from Oxley for these events. In November 2010, Evans struck and damaged a drive-thru sign on customer property. In August 2012, he hit a parked car on customer property. In May 2013, he struck and damaged a bollard at a Social Security Administration building. In February 2017, he damaged a door frame of a customer's building. Then, in August 2018, he again backed into a vehicle on customer property. Evans

4                    Opinion of the Court                    22-10912

was also involved in couple minor incidents that were not written up.

Two days after the August 2018 accident, Oxley notified Evans he was being terminated for having "too many accidents." In his write-up of the August 2018 accident, Oxley stated that, "with as many accidents that Edgar has had in the past I feel it is necessary for BHT to [t]erminate Edgar[']s employment." BHT's separation documents for Evans included Oxley's write-ups for the five chargeable accidents described above. Around this time, Oxley emailed Cleve McDaniel, BHT's Assistant Controller, to say he would be firing Edgar for making "to[o] many mistakes."

Evans applied for unemployment benefits after his termination. McDaniel submitted a response on behalf of BHT in September 2018, citing the five accidents as the reason for his termination. In response to an inquiry from the Alabama Department of Labor, McDaniel stated that Evans was terminated pursuant to a policy allowing for dismissal after having "any combination of two accidents or two tickets in [three] years." McDaniel summarized the conversation in an October 2018 email to Oxley. Oxley testified, however, that he did not have a policy under which he automatically terminated a driver for having a set number of accidents.

After Evans's termination, BHT had difficulty reliably servicing customers on his former routes, leading to customer complaints. Lynn Webber, BHT's Assistant Plant Manager, stated in a September 2018 e-mail that one driver would start in approximately two weeks to replace Evans and that Webber was working

to hire another.  Subsequent emails show that existing BHT drivers were assigned to Evans's former routes.  On January 16, 2019, in response to an email from a BHT logistics manager stating that BHT "need[ed] a full time grease driver to fill [Evans's] position," Webber stated that he was hiring a driver to do so.  BHT records show that it hired as drivers a 55-year-old male (Jonathan Russell) in October 2018 and a 27-year-old male (Jonathan Rogers) in November 2018.

## II.

In May 2019, Evans filed a complaint against BHT, alleging claims of race discrimination under Title VII and age discrimination under the ADEA.[2]  Following discovery, BHT moved for summary judgment, arguing that Evans could not establish a genuine issue of material fact that his termination was motivated by age or race.  Evans responded in opposition, contending that a jury could infer discrimination and pretext because, in his view, he was treated less favorably than similarly situated comparators, BHT offered shifting and arbitrary explanations, and Oxley made ageist comments just before his termination, among other things.

The district court granted summary judgment to BHT.  The court found Evans failed to establish a *prima facie* case of age or

---

[2] Evans also alleged race discrimination under 42 U.S.C. § 1981, but he does not reference that claim on appeal, and, in any case, it would be subject to the same analysis as his Title VII claim. *See Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1174 n.6 (11th Cir. 2010).

race discrimination for lack of a proper comparator or a showing that he was replaced by someone outside his protected classes. The court also determined that Evans could not establish either pretext in BHT's explanation or a "convincing mosaic" of circumstantial evidence that would allow a jury to infer that his termination was motivated by his age or race. Evans now appeals.

## III.

We review *de novo* a district court's summary-judgment ruling, construing the evidence and drawing all reasonable inferences in favor of Evans, the nonmoving party. *Tolar v. Bradley Arant Boult Commings, LLP*, 997 F.3d 1280, 1288–89 (11th Cir. 2021). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

At the summary-judgment stage, the judge's function is not to weigh the evidence but to determine if there is a "genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* Therefore, summary judgment may be granted "[i]f the evidence is merely colorable or is not significantly probative." *Id.* at 249–50 (citations omitted).

## IV.

The parties address the ADEA and Title VII claims together, so we follow their lead. The ADEA prohibits employers from firing

an employee who is at least 40 years old "because of" the employee's age.  29 U.S.C. §§ 623(a)(1), 631(a).  Title VII makes it unlawful for employers to make employment decisions based on race, among other things.  42 U.S.C. § 2000e-2(a)(1).

We often apply a burden-shifting framework when evaluating ADEA or Title VII claims at summary judgment, under which the plaintiff must first establish a *prima facie* case of discrimination.  *Sims v. MVM, Inc.*, 704 F.3d 1327, 1333 (11th Cir. 2013) (ADEA); *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004) (Title VII).  If the plaintiff makes that showing, the employer must articulate a legitimate, nondiscriminatory reason for its action, at which point the plaintiff has the chance to show the employer's proffered reason is a pretext for unlawful discrimination.  *Wilson*, 376 F.3d at 1087; *see Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010).

Nevertheless, the "crux of the analysis" at summary judgment is simply "whether the plaintiff has offered sufficient evidence to establish a genuine issue of discrimination." *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1240 (11th Cir. 2016).  A "plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Sims*, 704 F.3d at 1333.  A plaintiff may establish a genuine issue of discrimination with "evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements, and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better

treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis v. City of Union City* ("*Lewis II*"), 934 F.3d 1169, 1185 (11th Cir. 2019) (cleaned up).

When a plaintiff seeks to prove discrimination with evidence that an employee outside his protected class was treated more favorably, he must show that the alleged comparator was "similarly situated in all material respects." *Lewis v. City of Union City, Ga.* ("*Lewis I*"), 918 F.3d 1213, 1226–27 (11th Cir. 2019) (*en banc*). A valid comparator ordinarily is someone who engaged in the same basic conduct as the plaintiff, who was subject to the same employment policies and decisionmaker, and who shared the plaintiff's employment or disciplinary history. *Id.* at 1227–28. The lack of a proper comparator is not necessarily dispositive, though, if the evidence viewed as a whole still supports a reasonable inference of discrimination. *Jenkins v. Nell*, 26 F.4th 1243, 1251 (11th Cir. 2022).

Here, the district court properly granted summary judgment because the evidence, even viewed in the light most favorable to Evans, does not support a reasonable inference that his termination was motivated by his age or race. We assume without deciding that Evans was replaced at least in part by younger employees. Nevertheless, Evans's proffered comparator is not similarly situated in material respects, and the record lacks sufficient other circumstantial evidence from which a jury could reasonably infer age or race discrimination.

Evans argues that an inference of discrimination may be drawn from BHT and Oxley's treatment of John Abbott, a white

BHT truck driver.[3]  Evans claims that Abbott was involved in six accidents, but was not, like Evans, fired as a result.

The problem for Evans is that, of these six accidents, Oxley determined that only one was "chargeable" to Abbott: a 2018 accident in which he hit a car hauler loaded with Corvettes.  The other accidents were on BHT property, did not involve driver error, or involved spills from trucks, and so were not chargeable, according to Oxley's framework.[4]  Thus, Abbott, who was hired in 2005, had one chargeable accident in fourteen years as a BHT driver, while Evans had five chargeable accidents in just over half that time.  Because "[a]n employer is well within its rights to accord different treatment to employees . . . who engaged in different conduct," *Lewis I*, 918 F.3d at 1228, no reasonable inference of discrimination can be drawn based on a comparison to Abbott.

Evans responds that the distinction between chargeable and nonchargeable accidents "is not supported by the evidence," noting that this distinction is not reflected in BHT's manuals.  In Evans's view, Oxley's failure to follow company policy, as reflected in the manuals, suggests pretext.  *See Hurlbert v. St. Mary's Health Care*

---

[3] Evans has abandoned reliance on the other comparators he proposed below by failing to address them on appeal.

[4] Evans fails to support his assertion that Oxley deviated from BHT policy by not investigating when Abbott hit a coworker's son's car.  Oxley testified that he spoke to those involved once he learned of the accident and that the coworker blamed his son, not Abbott.  Evans does not suggest what else Oxley reasonably should have done.

*Sys., Inc.*, 439 F.3d 1286, 1299 (11th Cir. 2006) ("[A]n employer's deviation from its own standard procedures may serve as evidence of pretext").

But there is no evidence that Oxley applied a different rule with Evans than he did with other employees. Rather, the record reflects, and Evans does not dispute, that Oxley applied the chargeable/nonchargeable distinction to all employees equally, regardless of race or age. Even Evans benefited from it at times. Thus, any deviation from the policies on the books cannot, on this record, be attributed to discriminatory animus. *See Berg v. Fla. Dep't of Labor & Emp't Sec.*, 163 F.3d 1251, 1255 (11th Cir. 1998) (holding that deviation from company policy, absent a showing of inconsistent application, is not sufficient to infer intentional discrimination).

That Oxley's chargeability framework may be subjective and discretionary does not alone establish pretext. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1034 (11th Cir. 2000) (*en banc*) (holding that subjective reasons may be "legitimate, nondiscriminatory reason[s]" if they are reasonably clear and specific). Here, Oxley explained the standards he used to assess whether an accident was chargeable or nonchargeable, and the record reflects the reasons he classified each of Evans's five accidents as chargeable. And Evans does not contend that those standards were applied inconsistently in his case or other cases.

While Evans questions the wisdom of Oxley's framework and why five minor accidents warranted termination, "it is not our

role to second-guess the wisdom of an employer's business decisions—indeed the wisdom of them is irrelevant—as long as those decisions were not made with a discriminatory motive." *Alvarez*, 610 F.3d at 1266 (quotation marks omitted).  And it is not incoherent or unreasonable for a company to treat accidents on customer property more seriously, given the potential to lose customers or incur outside liability, than similar ones on company property or spills from open-top trucks.  Nor was it unreasonable to look at Evans's driving history as a whole when considering discipline for even a relatively minor accident.

Next, Evans maintains that BHT offered shifting justifications for his termination.  Shifting justifications may evidence pretext, *see Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1195 (11th Cir. 2004), but only when the justifications actually shift, *see Tidwell v. Carter Prods.*, 135 F.3d 1422, 1428 (11th Cir. 1998).  Oxley told Evans he was being terminated for having "too many accidents" while driving, and he expressly referenced the five accidents described above when documenting the termination.  That has been BHT's consistent position throughout this case.[5]  That Oxley did not specifically reference or explain the chargeable/nonchargeable distinction at the time does not make BHT's later reliance on that distinction inconsistent or conflicting.

---

[5] Although an email from McDaniel referenced a termination policy that apparently does not exist, he had no role in the decision to terminate Evans.

Notably, the record reflects Oxley using that distinction as early as 2012.

Evans also cites ageist comments by Oxley calling him "old man." Ageist comments may provide circumstantial evidence to support an inference of discrimination. *See Mora v. Jackson Mem'l Found., Inc.*, 597 F.3d 1201, 1204–05 (11th Cir. 2010) (comments by a supervisor that a plaintiff is "too old" were circumstantial evidence of age discrimination). But comments like Oxley's generally are not sufficient to establish a genuine issue of discrimination, absent other evidence of pretext in the employer's rationale. *Rojas v. Florida*, 285 F.3d 1339, 1343 (11th Cir. 2002). And for the reasons we have explained, Evans has not established any reasonable grounds to disbelieve BHT's rationale that it fired Evans for having too many chargeable accidents over his eight-year tenure.

For these reasons, we affirm the district court's grant of summary judgment to BHT on Evans's claims of age and race discrimination.

**AFFIRMED.**